STATE of Missouri,
Plaintiff-Respondent,

v.

John Francis OLDS,
Defendant-Appellant.

No. 60365.

Supreme Court of Missouri,
en banc.

Sept. 12, 1978.

J. Martin Hadican, Clayton, for defendant-appellant.

John D. Ashcroft, Atty. Gen., Daniel F. Lyman, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

RENDLEN, Judge.

In this case, transferred here after opinion in the Court of Appeals, St. Louis District, defendant appeals his conviction on four counts of robbery in the first degree with a dangerous and deadly weapon, § 560.135, RSMo 1969. He was sentenced by the jury to imprisonment for terms of thirty years on each of Counts I and III and to twenty-five years on each of Counts II and IV, which were ordered by the court to run concurrently. Because of error in the admission of testimony concerning defendant's oral confession following his arrest, we reverse and remand.

On the afternoon of April 8, 1975, defendant with two armed accomplices forcibly entered the Clayton home of Mrs. Jerry James and for approximately fifty-five minutes ransacked the house, taking money at gunpoint from the persons there including Mrs. James, her son, the tutor, and the maid. Leaving the four victims bound hand and foot on the floor of the home, the gunmen fled. Abundant testimony placed defendant at the scene and described his part in the crimes.

The following day, acting on apparently reliable information (only a marginal showing thereof appears in the record) two police officers from the City of Clayton, one of whom was Francis Koenig, with an officer from the St. Charles City Police Department and a deputy from the St. Charles Sheriff's Department, arrested defendant and one Paul Killian in St. Peters, Missouri. At the arrest scene, defendant, who had been advised of the charges and been given the *Miranda* warnings advising him of his constitutional rights, denied involvement in the crime. He was taken to the St. Charles County Sheriff's Office and there questioned; thence to the police station in Clayton where the interrogation continued. It is undisputed that defendant signed a waiver of rights form at about 8:10 p. m. in the St. Louis County Jail following more than two and one-half or four hours of questioning, depending on whether the arrest occurred at 4:00 p. m. as testified by defendant or at approximately 5:30 p. m., the time fixed by the police. Shortly after signing the waiver form, defendant confessed the crimes.

Olds moved to suppress his incriminating statements, the first of which was made immediately after he was taken into custody and while being transported to the St. Charles County Jail. That statement was an off-hand remark concerning his knowledge of the victim's Great Dane dog apparently present at the scene of the crime. The second was a statement or series of admissions made in response to questions concerning the crimes made at the St. Louis County Jail sometime after signing the waiver form at 8:10 p. m. on the day of arrest.

We first consider defendant's contention that the court erred in overruling his motion to suppress and receiving in evidence the testimony of Officer Koenig relative to defendant's statement about the dog. Defendant maintains that statement was the fruit of a warrantless arrest made without probable cause, in violation of his rights under the fourth, fifth and sixth amendments to the United States Constitution as made applicable to states by the fourteenth amendment to the United States Constitution. Because of the sketchy testimony concerning the information on which the officers acted in making the arrest we shall assume arguendo it was without probable cause. As noted above, defendant was arrested in St. Peters, Missouri with one Paul Killian and immediately after receiving the *Miranda* warnings was driven with Killian to the St. Charles County Jail. During that trip the statement was made. Officer Koenig testified at the suppression hearing to the following circumstances:

Q. . . . could you set the scene for the Court as to who you were talking to and what your conversation was?

A. Yes, sir. We were in Deputy Sheriff Stephen's police car; we were proceeding to the St. Charles County Sheriff's Office. I was talking to the deputy Sheriff in relation to a large Great Dane dog—

\* \* \* \* \* \*

A. As I was saying, I was talking to the deputy with regard to a Great Dane that was at the residence of the victims in this incident. I mentioned that that dog was huge, that he weighed approximately 200 pounds, and I said, 'But that was the friendliest dog I've ever seen.' At that time Mr. Killian stated, '*That sure was the friendliest dog I've ever seen,' and John Olds agreed with him.* (Emphasis ours.)

Q. So at that time then when Mr. Olds spoke up it wasn't in connection with any questions directed to him?

A. No, sir.

Q. It was concerned with a dog that was at the residence that was robbed?

A. Yes, sir.

▉▉▉ At trial similar testimony was admitted over defendant's objection. The statement appears to have been made quite voluntarily after defendant had been warned of his right to remain silent and was not in response to any interrogation. By volunteering, defendant waived his right (as to this statement) to remain silent under the fifth amendment of the United States Constitution and art. I, § 19 of the Missouri Constitution, and no violation of *Miranda* occurred.[1] See *State v. Johnson*, 530 S.W.2d 690 (Mo. banc 1975); *Boyer v. State*, 527 S.W.2d 432 (Mo.App.1975). However, to support his contention defendant would also rely on the fruit of the poisonous tree doctrine of *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), alleging the violation of his rights under the fourth amendment of the United States Constitution and art. I, § 15 of the Missouri Constitution. Such reliance is misplaced. In holding that an accused's inculpatory statements were inadmissible "fruit" of an illegal arrest, the Court in *Wong Sun* refused to apply a "but for" test which might have compelled the exclusion of all such statements following an illegal arrest. 371 U.S. at 487–88, 83 S.Ct. 407. Instead the Court stated that admissibility of such statements should rest on a determination of " 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by *exploitation* of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " (Emphasis ours.) *Id.*, quoting Maguire, Evidence of Guilt 221 (1959). One of the "sufficiently distinguishable means" of obtaining untainted evidence is through a statement "sufficiently an act of free will to purge the primary taint . . . ." *Id.* at 486, 83 S.Ct. at 416.

In *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), also cited by

1. See *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

defendant as authority for his contention, the Court ruled that the giving of *Miranda* warnings after an *illegal* arrest cannot "alone and per se" assure in every case that a suspect's subsequent confession is "sufficiently a product of free will to break, for Fourth Amendment purposes, the causal connection between the illegality and the confession." 422 U.S. at 603, 95 S.Ct. at 2261. In *Brown*, the police had exploited the illegal arrest, after the *Miranda* warnings had been given, by confronting the defendant · with certain information and asking him if he wanted to talk about the crime. The Court had no reason to and did not adopt a "but for" test in considering the taint from an illegal arrest.

We find the officer's statement made in the car when driving to St. Charles concerning the victim's dog does not rise to the level of exploitation of the illegal arrest against which the *Wong Sun* principle is directed. The statement was not a question addressed to the defendant or his companion. No questioning had yet taken place. Absent exploitation of the illegality, the causal link between defendant's arrest and his statement was sufficiently broken to permit its admission in evidence and we decline defendant's invitation to invoke the "but for" rule similarly refused in *Brown* and *Wong Sun*.

As this Court noted in *State v. Johnson*, 530 S.W.2d 690, 693 (Mo. banc 1975), "The criteria enunciated in *Brown v. Illinois, supra*, with respect to confessions following an illegal arrest was the law of this state prior to *Brown* and was articulated and applied in the earlier *Johnson* case and in *State v. Fair*, 467 S.W.2d 938, 943 (Mo. banc 1971)."

Finally, the factors suggested by *Brown* for consideration in determining the extent of the taint must be weighed. *Miranda* warnings had already been given. The temporal proximity of the statement to the arrest and the absence of intervening circumstances in this case are balanced by the absence of any attempt to exert pressure on the defendant on the way to St. Charles. In short, defendant's inculpatory state-ments volunteered as an affirmance of the officer's observation concerning the dog was sufficiently an act of free will to purge the alleged primary taint of the arrest and testimony concerning the "dog statement" was properly admitted in evidence.

We turn now to the oral confession elicited at the St. Louis County Police Station. Defendant in his motion to suppress charged the confession (consisting of a series of oral questions and answers), was taken in violation of defendant's federal fourth, fifth and sixth amendment rights, as well as his rights under Mo.Const., art. I, §§ 15, 18(a) and 19. At the suppression hearing defendant testified unequivocally that he told his interrogators in the Sheriff's Office at St. Charles and later in the St. Louis County Police Station prior to· signing the waiver form that he wished to remain silent and wanted to contact a lawyer but was told that he must wait until the interrogators were through with their questioning. Defendant admitted that he had been told "I had the right to remain silent and I had a right to contact a lawyer" but repeatedly maintained that his several requests to contact an attorney were .ignored and that questioning concerning the crime continued. At one point he stated that he not only asked to contact an attorney but also to call his parents and again was told that ". . . as soon as they were through I would be able to contact my lawyer then." The interrogation involved three armed officers in St. Charles and the same number in a small interrogation room during most of the time in the St. Louis County Jail. A portion of defendant's testimony concerning the St. Charles interrogation is as follows:

Q. And after you told the officer that you wanted to talk to a lawyer, that you didn't want to answer questions, were you then asked further questions about the alleged crime?

A. Yes.

Q. . . . [W]hat was your response when you were asked further questions about this alleged crime?

A. Same as before, that I wanted to contact my lawyer.

Q. What were you told on that occasion?

A. That I wouldn't be able to contact them [sic] until later on.

Q. Then how long were you kept in St. Charles County?

A. Approximately two hours.

At the St. Louis County Jail he was again given the *Miranda* warnings whereupon the questioning concerning the crime resumed. As to this period of interrogation defendant testified: "I explained that I wanted to contact my parents or an attorney."

Q. During that time were questions asked you about this alleged crime, during the entire time [i. e., the hour and a half]?

A. Yes, sir.

Q. During that time while questions were being asked of you, what was your response during that entire time?

A. That I would like to contact my lawyer.

Q. Did you answer any questions during that time?

A. No, I did not.

He was then taken to another interrogation room, where a different officer continued the questioning and this testimony appears:

Q. Was he one of the officers who had been in the other room with you?

A. No, sir.

Q. Now when you got into this other room then, did this officer then ask you some further questions about the alleged crime?

A. Yes, sir.

Q. And what was your response to the questions he asked you?

A. That I would like to contact my lawyer before I answered.

Q. What did he tell you?

A. He told me that after he was through I would be able to contact anybody I wished.

Q. Then after you told the officer that, what you just said, did he persist in asking further questions about the alleged crime?

A. Yes, sir.

Q. And then did he say anything else to you about the questions he was asking you or you answering them?

A. Yes, sir.

Q. What did he say about that?

A. He said that if I was—he told me that he had already had one statement written against me, if I was to answer all his questions that it would go a lot easier on me.

Q. Then did he ask you some questions about the alleged crime?

A. Yes, sir.

Thereafter a waiver of rights was signed at about 8:10 and arresting Officer Koenig, the only State's witness at the pretrial suppression hearing, testified that Olds had been at the Clayton Police Station for approximately one hour prior to signing the waiver. Thus defendant was under interrogation during much of the two and one-half to four hour custodial period (depending on the time of arrest) and thereafter confessed.[2]

By way of rebuttal in the suppression hearing Officer Koenig, testifying concerning the confessions, stated that *he* did not interrogate the defendant at St. Charles but admitted that he was not with the defendant at all times while he was being "processed through there." When asked the question, "Do you know whether or not he was questioned concerning the Clayton robbery by the St. Charles police" he an-

2. Defendant further testified that during the twenty-four hours immediately prior to arrest he had only two hours sleep. In response to the cross-examination of the State's attorney on these matters, this appears:

Q. Why did you answer their questions?
A. I was scared.
　　　*　　*　　*　　*　　*　　*

Q. . . . [D]id the officer say anything to you about what might happen to you good or bad, if you answered those questions?
A. Yes, sir, he did.
Q. What did he say to you?
A. He said that if I answered the questions that it would possibly help me in front of a judge.

The alleged promise of leniency or the veiled threat was in essence denied by Koenig.

swered only that, "To my knowledge, I don't recall that he was." He also stated that *he did not request* anyone to interrogate defendant. Koenig related that the defendant was conveyed to the police station in Clayton and he was at the station until about 8:10 p. m. when defendant finally signed the *Miranda* waiver form.

Significantly, Koenig, who was called to the stand immediately following defendant and who testified that no threats nor promises of leniency were made by any of the three police officers in the room with the defendant at the Clayton Police Station, did not deny Olds' testimony concerning his ignored requests to remain silent and to obtain counsel, or his testimony that the questioning continued unabated thereafter. We find nothing in Koenig's testimony which expressly or inferentially contradicts defendant's claim that he asserted his fifth and sixth amendment rights. These matters simply were not touched on in the suppression hearing testimony offered by the State. The court at the close of the hearing made no findings of fact, but stated, "Motion to Suppress will be overruled."

During trial, at the court's suggestion, further evidence was heard outside the jury's presence on the question of voluntariness to determine admissibility of the evidence concerning the dog statement and the confession. The State was thus afforded additional opportunity to bolster its position and refute the earlier testimony of defendant but again offered only the testimony of Koenig. In this voir dire, Koenig once more testified that defendant had been advised of his constitutional rights but did not deny defendant's previous testimony that he had requested an attorney and had asserted his right to remain silent during interrogation before signing the waiver and confessing the crime. Nor did Koenig deny that the questioning continued after defendant's assertion of his fifth and sixth amendment rights. He merely related that after the questioning, defendant at 8:10 p. m. signed the waiver form and thereafter made certain incriminating statements in response to interrogation by the officers. Immediately following this testimony and

before recalling the jury the court made these findings:

> [T]he court finds that the statements made while defendant was being transported to the St. Charles County Sheriff's office and later the statement made at the Clayton police department were made after he had been warned of his *Miranda* rights and that *they were voluntarily made and were not the result of any force or duress used against him,* therefore, the court will admit them in evidence. (Emphasis added.)

Testimony concerning the statement and the confession was promptly offered and admitted in evidence.

Our resolution of defendant's challenge to the court's action admitting the confession requires an answer to these questions: (1) were the trial court's findings sufficient to dispose of the issues raised by defendant's motion to suppress and (2) was the finding of voluntariness supported by the record. As to the former, it might be argued that implicit in the trial court's general finding of voluntariness and absence of force or duress, was a determination that defendant did not request counsel or assert the right to remain silent. However, the trial court's general finding does not expressly address the issue of whether defendant affirmatively raised his fifth and sixth amendment rights.

It has been stated that "[a]t a minimum, the trial court's findings on essential factual issues must, in the language of *Jackson v. Denno,* [378 U.S. 368, 378 n. 8, 84 S.Ct. 1774, 12 L.Ed.2d 908], be 'ascertainable from the record.' " *State v. Monteer,* 467 S.W.2d 48, 52 (Mo. banc 1971). This is not to say that as the trier of this mixed question of law and fact the court in its discretion could not have determined that defendant's testimony was not worthy of belief and settled the issue for purposes of the record and determination on this appeal, but if failed so to do. In *Monteer,* when considering the record in a somewhat similar fact situation, this Court was willing to draw certain inferences to support the chal-

lenged suppression hearing findings of the trial court. That case involved *conflicting testimony* in which the state offered evidence contrary to that of defendant's on the factual issue under consideration and which supported such an inference. There the factual issues were (1) whether *Miranda* warnings had been given prior to the questioning of defendant, and (2) whether the confession had been procured through acts of coercion, promises or threats by the interrogating officers.

Testimony was presented by the defendant to the effect no warnings had been given and that he had been coerced, however, extensive testimony was presented by the State to the contrary on both questions. The trial court, in its findings, held that the confession was voluntary and not procured by coercion, threats or promises and this Court held that though there was no specific findings that *Miranda* warnings had been given, the trial court's finding was sufficient because it "necessarily implied the finding that the defendant's version [of the evidence, i. e., that there were no warnings] was rejected." 467 S.W.2d at 54. Thus abundant State's evidence supported the inference that the trial court had indeed chosen between the conflicting testimony, believing that of the State's witnesses and disbelieving that of defendant. Such is not the case here. The only testimony concerning the request to remain silent and for assistance of counsel is the affirmative testimony of defendant that he made such requests.

■ In *State v. Alewine,* 474 S.W.2d 848, 852 (Mo.1971), this Court stated:

When a defendant testifies, as here, that he did state a desire to remain silent and demanded an attorney, the trial court must make a factual determination resolving the issue . . . . The credibility of the witnesses is for the trial court to determine.

In *Alewine,* a finding was made by the trial court that "defendant of his own free will had waived all such rights and agreed to give an oral statement without any attorney being present; that the statement was not procured by coercion, threats, fear or promise of leniency; that defendant did not request counsel." 474 S.W.2d at 850. Here, in the absence of the trial court's finding that it disbelieved defendant's testimony regarding requests for an attorney and to remain silent, we cannot find that the record supports the finding that the waiver and subsequent statements were voluntary. The only evidence on the subject was defendant's unrefuted testimony which stands contrary to such a conclusion. The trial judge could disbelieve defendant and find his testimony incredible, but he made no finding to that effect and the State made no effort to refute by Koenig or any other witness defendant's affirmative testimony in the suppression hearing.

■ It must be remembered that because the confession was obtained while the suspect was in custody, the burden of proving its voluntariness is upon the State. While the burden of proceeding is on defendant, once he has made his allegations regarding the inadmissibility of the statements, the burden of proof is on the State to show compliance with the guidelines set forth in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and the voluntariness of the statement. In *Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972), the Supreme Court held that voluntariness of such confession need be proved by a *preponderance of the evidence,* which is the standard we adopt for such cases.

*State v. Hunter,* 456 S.W.2d 314 (Mo. 1970), and *State v. Lyle,* 511 S.W.2d 817 (Mo.1974), represent the most recent pronouncements by this Court on the standards by which to assess a finding of voluntariness. *Hunter,* at 322, acknowledges the burden which rests upon the State to prove knowing waiver of the procedural safeguards of *Miranda.* However, the court in that case repeats the pre-*Miranda* and pre-*Lego* statement that the standard to be applied in determining if the State had carried its burden of proving voluntariness is whether the evidence *conclusively shows* that the confession is *involuntary. Lyle,*

*supra* at 818, follows *Hunter's* lead on this point. This standard seems to improperly shift the burden of proof. As stated above, we now adopt the "preponderance of the evidence test" and the burden once placed on the State is measured against that standard. To the extent that *Hunter* and *Lyle* are contrary, they should no longer be followed.

■ In the light of defendant's uncontradicted testimony, the State cannot be held to have established by a preponderance of the evidence a basis to support the finding of voluntariness. The defendant having once asserted his right to remain silent and to obtain counsel, questioning should have ended until such time as he voluntarily changed his mind or counsel was present. The evidence shows the State persisted in the questioning which renders the waiver and the subsequent statements inadmissible. *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 423 (1977); *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *State v. Wood*, 559 S.W.2d 268 (Mo.App.1977). *Cf. Michigan v. Mosley*, 423 U.S. 96, 104 n. 10, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975).

On retrial, the court will be free to hold further hearings, at which the parties may offer evidence on the issues raised by defendant's motion to suppress. Compare *Sims v. Georgia*, (I), 385 U.S. 538, 543, 87 S.Ct. 639, 17 L.Ed.2d 593 (1967) with *Sims v. Georgia*, (II), 389 U.S. 404, 406, 88 S.Ct. 523, 19 L.Ed.2d 634 (1967). The trial court should then make further findings and a determination of the voluntariness of the confession. As stated in *Monteer*, 467 S.W.2d at 52, "[I]t is always advisable for the trial court to make explicit findings reflecting the specific facts upon which the trial court relies in determining the admissibility of a confession or the waiver of rights."

Defendant also challenges the admissibility of the confession on fourth amendment grounds contending it was tainted by the allegedly illegal arrest. The cause is to be remanded for the reasons set forth above, and because the evidence presented on re-

trial may not be the same as that in the record before us, we need not decide the question. Nevertheless, on retrial, if the State successfully meets defendant's fifth and sixth amendment challenge concerning procurement of the confession, it may well face the fourth amendment challenge, which could involve the burden of showing the warrantless arrest was for probable cause and thus valid, *State v. Howell*, 524 S.W.2d 11 (Mo. banc 1975), or failing so to do, of showing that the statements were not tainted by exploitation of the illegal arrest, *Brown v. Illinois*, 422 U.S. 590, 604, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), and the attenuating effect of defendant's voluntary dog statement upon the taint, if any, of the arrest and similar factors. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

■ The next point we consider relates to the introduction of three photographs, one of defendant and two of rifles seized from the house where defendant was arrested. Defendant complains of the introduction of the three photographs on the ground they represent fruits of an illegal arrest. That of defendant was taken after his arrest and was used in the array of photos shown to the witnesses for identification purposes. The use of defendant's photograph by the witnesses for identification purposes was proper and defendant's objection in that particular is without merit. The witnesses' identification of defendant emanated from a source independent of the arrest, viz, their recollection of the robbery. The taking of and use of the photographs were not constitutionally impermissible. *State v. Thomas*, 491 S.W.2d 328 (Mo.1973); *State v. Lynch*, 528 S.W.2d 454, 458–60 (Mo.App.1975). As to the photographs of the rifles, the objections thereto were not properly preserved for appellate review, but the parties must be aware that on retrial they will have an opportunity to develop the facts surrounding defendant's arrest and the search of the house in order that the trial court may have sufficient

information[3] to rule the question if properly presented.

The final allegation of error concerns the trial court's overruling of defendant's objection to portions of the assistant prosecuting attorney's final argument. Defendant points out that the burden was on the State to fairly state its essential points in opening argument or be denied the opportunity in closing argument to argue such points. He charges that the court ignored this requirement and permitted closing argument beyond the scope of the issues raised in opening argument by the State. Under the record here the point appears not to be well taken nevertheless we cannot say what form the arguments may take on retrial and accordingly need not decide the issue.

The cause is reversed and remanded.

MORGAN, C. J., BARDGETT, DONNELLY and SEILER, JJ., and HIGGINS, Special Judge, concur.

HOUSER, Special Judge, dissents.

FINCH, J., not sitting.

SIMEONE, J., not participating because not a member of the Court when cause was submitted.

3. Such factors as the existence *vel non* of probable cause for arrest, the existence and scope of consent to search and the scope of the search itself, the motivation of the officers, *e. g., United States v. Edmons,* 432 F.2d 577 (2d Cir. 1970), the existence of other means of obtaining the evidence, *e. g., United States v. Young,* 512 F.2d 321 (4th Cir. 1975), *cert. denied,* 424 U.S. 956, 96 S.Ct. 1432, 47 L.Ed.2d 362 (1976), as well as the standing of defendant to object, all may have relevance. We mention these only as examples, not as a comprehensive list of pertinent factors.