STATE of Missouri, Respondent,

v.

Herman SMITH, Appellant.

No. 40480.

Missouri Court of Appeals, Eastern District, Division Three.

July 24, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 17, 1979.

Application to Transfer Denied Nov. 14, 1979.

Richardson & Carnasiotis, Scott Richardson, Clayton, for appellant.

John D. Ashcroft, Atty. Gen., Steven Scott Clark, Asst. Atty. Gen., Jefferson City, for respondent.

GUNN, Judge.

Defendant was convicted of first degree robbery and sentenced under the Second Offender Act to 35 years imprisonment. He challenges the admission of his oral and video taped statements alleging: (1) that the video taped statement was taken after he had requested an attorney and that it was made in violation of his *Miranda* rights; (2) that the video taped statement was involuntarily given after a prolonged detention of five days prior to arraignment; and (3) that the oral and video taped statements were the product of an illegal arrest. Defendant also charges the prosecutor with an improper comment on his right to not testify. We affirm.

About 12:30 in the morning of January 13, 1977, two police officers observed the defendant accompanied by a man and a woman enter a St. Louis tavern. Shortly thereafter the officers received a report of an automobile accident which had occurred around the corner from the tavern. Upon investigation the police found that the man who had accompanied the defendant into the tavern was at the auto involved in the accident. The police returned to the tavern and asked the defendant and his female companion for identification. The defendant responded with his, but the woman possessed none and denied ownership of a purse under the chair in which the defendant was sitting. The purse was taken by the police and was found to contain a loaded revolver and the woman's identification. The defendant was arrested for carrying a concealed weapon and taken to the police station. At 8:53 a. m. on the same day a warrant charge for carrying a concealed weapon was refused. Meanwhile, police determined that the automobile which had been involved in the accident belonged to Lawrence Glenn Douglas. At 11:30 a. m. police found the body of Mr. Douglas in his apartment. He had been stabbed to death with a knife and his apartment had been ransacked. At 3:20 p. m., while still in a holdover cell defendant was placed under arrest for murder and robbery. At 3:50 p. m., after having been given his *Miranda* warnings, defendant gave an oral state-

ment acknowledging his participation in the robbery of Douglas, but he denied any direct involvement in the murder. At 9:30 p. m. a warrant was issued against defendant on the charge of murder and robbery. On Tuesday, July 18, 1977 at 11:20 a. m., defendant made a video taped statement substantially the same as the oral statement given on January 13 at 3:50 p. m. About the same time the video taped statement was made an information for first degree robbery and murder was filed.

The oral and video statements given by defendant were consistent with each other and related the final hours of Lawrence Glenn Douglas' earthly adventures which ended in grim tragedy. Defendant stated that he and a companion, Mason VanDiver, were in a south St. Louis grill when Mr. Douglas entered and sat next to them at the counter. VanDiver engaged Mr. Douglas in a conversation and persuaded him to give the defendant and VanDiver an automobile ride. While in the auto, VanDiver produced a revolver and forced Mr. Douglas to drive them to Douglas' apartment and allow them entry. Inside, VanDiver struck Douglas on the head with the gun and then stabbed him mortally. Defendant professed no part in ending Mr. Douglas' life but acknowledged that he assisted VanDiver in stripping the dead body of its valuables, including rings and a watch. When the defendant was ultimately apprehended and searched, Mr. Douglas' watch and diamond ring were in his possession. From the Douglas apartment, defendant and VanDiver took the victim's car and began a drinking and drug spree during which they picked up the woman who was with them when the auto accident led to the termination of their freedom.

■ Defendant's first complaint of error is that the video taped confession was given in violation of his *Miranda* rights. The video taped statement disclosed the following colloquy between the defendant and the interrogating police officer:

Q. My name is Edward DeVere. This is Herman Smith [defendant] This is De-

tective Joseph Burgoon. Herman, I'm going to advise you of your rights. You have the right to remain silent. Anything you say can and will be used against you in court. You have a right to a lawyer, to have him with you while you are being questioned. If you cannot afford to hire a lawyer one will be appointed for you before any questioning, if you so desire. Do you understand your rights?

A. [Defendant] Yeah.

Q. Speak up please. A. Yes.

Q. Do you wish an attorney present?

A. You can bring one.

Q. Do you wish an attorney present, yes or no?

A. No.

Q. Do you want to make a statement?

A. Yeah, I'll make one.

Defendant contends that after telling his interrogator that he could bring an attorney, the further questioning was an unlawful continuation of the interrogation as there was not an effective waiver of his right to counsel. "If the individual states that he wants an attorney, the interrogation must cease until an attorney is present." *Miranda v. Arizona,* 384 U.S. 436, 474, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694 (1966). *Accord: State v. Olds,* 569 S.W.2d 745 (Mo. banc 1978). But "[i]f he is indecisive in his request for counsel, there may be some question on whether he did or did not waive counsel. Situations of this kind must necessarily be left to the judgment of the interviewing Agent." *Miranda v. Arizona, supra,* 384 U.S. at 485, 86 S.Ct. at 1633, in giving cachet to F.B.I. procedures for interrogation of persons under arrest.

In rejecting a per se rule requiring an express statement from a defendant to effectively waive the right to presence of counsel, *North Carolina v. Butler,* 441 U.S. 369, 374, 99 S.Ct. 1755, 1758, 60 L.Ed.2d 286, 293 (1979), reaffirmed *Miranda's* flexible standard for determining whether there has been a waiver: "[T]he question of waiver must be determined on 'the particular facts and circumstances surrounding that case, including the background, experience,

and conduct of the accused.' " (quoting from *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)).

The issue of uncertainty was addressed by the Missouri Supreme Court in *State v. Phillips,* 563 S.W.2d 47 (Mo. banc 1978). In *Phillips* the defendant was read his rights and immediately thereafter said "that he didn't know if he should talk to * * * a lawyer." *Id.* at 52. The court upheld the trial court's finding that the defendant did not express a desire to consult with an attorney but had waived his right to counsel.

A near replica of the situation confronting us was presented in *State v. Weinacht,* 203 Neb. 124, 277 N.W.2d 567 (1979). There, the officer gave the defendant his *Miranda* warnings and the following colloquy ensued:

Q. [Officer] Knowing your rights in this matter, are you willing to make a statement to me now?

A. [Defendant] I would like to have an attorney present.

Q. Does that mean you do not want to say anything without an attorney present?

A. I'll—I've changed my mind. I'd like to tell you about it. *Id.* at 569. The court held that the officer's second question was not a further impermissible interrogation but a clarification which was permissible since the officer was uncertain as to the suspect's intention.

In *United States v. Rodriguez-Gastelen,* 569 F.2d 482, 483 (9th Cir. 1978), the following situation confronted the court on the issue of whether continued interrogation of the defendant was proper:

I [police officer] told him [defendant] that I would read his rights to him again, which I did in Spanish. At the end of the reading of these rights, the final question is, "Do you understand the rights?" And he said, "Yes, I understand, but I don't have money to pay for an attorney." I explained to him again that in that case, the Court here in Tucson would provide him an attorney.

I then asked him if he wanted to talk about what he had, and he said, "Okay, okay, but with an attorney." And I said, "Do you want to talk to me now without an attorney?" And to that he said, "That's fine."

The "That's fine" response of the defendant was specifically held to be a waiver of the defendant's prior request for counsel, and the further interrogation was thereby held proper. The "per se" rule eliminating possibility of waiver once request for counsel had been asserted was rejected—as in *North Carolina v. Butler, supra*—with the court recognizing that flexibility and realism should be applied in determining whether the defendant, once asserting *Miranda* rights, may voluntarily waive them so as to allow further interrogation. But we need not determine in this case whether there may be a waiver of rights once asserted. We believe that defendant's response to the question of whether he wanted an attorney was sufficiently ambiguous and indecisive as to completely warrant the police officer's subsequent question for clarification. The question "Do you wish an attorney present, yes or no?" was not to overbear the defendant's will in view of his prior equivocation as to whether he wanted an attorney during the interrogation. We defer to the trial court's experience that there was no definite assertion by the defendant that he wanted the presence of an attorney at his interrogation, and the finding by the trial court of a waiver of attorney was proper under *State v. Phillips, supra,* and *Miranda v. Arizona, supra.* This case is readily distinguishable from *State v. Olds, supra,* where police persisted in their interrogation after the defendant's unequivocal and unambiguous request for an attorney.

■ Defendant claims for his second point of alleged error that the video taped confession was the product of coercion as he had been held in a holdover cell five days prior to being brought before a magistrate. The circumstances of defendant's arrest and detention have already been recited. Section 544.260, RSMo 1969 and Rule 21.11

mandate that a person arrested under a warrant should be brought before a magistrate as soon as practicable. But delay in bringing a person before a magistrate does not render the confession involuntary. *Crooker v. California,* 357 U.S. 433, 78 S.Ct. 1287, 2 L.Ed.2d 1448 (1958); *State v. Blankenship,* 526 S.W.2d 78 (Mo.App.1975). Whether a confession is voluntary depends on the totality of the circumstances, *State v. Hamell,* 561 S.W.2d 357 (Mo.App.1977); and violation of a statutory requirement is a factor to be considered in the inquiry whether there has been physical or psychological coercion. *Fikes v. Alabama,* 352 U.S. 191, 77 S.Ct. 281, 1 L.Ed.2d 246 (1957). In this case there are no factors present to establish an attempt to enervate the defendant's will or make the video taped confession involuntary.

■ The circumstances of the present case lead inescapably to the conclusion that defendant's confession was voluntarily given. (1) The oral statement made simultaneously with defendant's arrest for the robbery charge, which was not attacked as being involuntary, was substantially the same as the video taped statement now challenged on appeal. (2) While defendant alleges in his brief that he was held incommunicado during the five day period, the claim was not made at the suppression hearing when defendant testified. (3) Defendant makes the self serving claim that he was induced to make both statements by police promises that they wanted the confession only to use against the co-defendant and that they would release him. At the suppression hearing the police denied such statements, and the issue of credibility was for the trial court. Although defendant admitted his participation in the robbery he attributed the murder solely to his co-defendant and the jury subsequently acquitted him on that charge. (4) No evidence was offered of actual or threatened physical violence or deprivation of food or sleep. Cf.: *State v. Olds, supra.* (5) Defendant was twenty-three years of age, had graduated from the eighth grade and had a prior criminal record. (6) Defendant was not

subjected to persistent or prolonged interrogations.

Defendant's third complaint is that the trial court erred in denying his motion to suppress his oral and video taped statements because they were obtained by the exploitation of an illegal arrest. Defendant claims that the arrest was illegal because it was made without probable cause.

Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a belief by a man of reasonable caution that the person to be arrested has committed a crime. *State v. Abbott*, 571 S.W.2d 809, 813 (Mo.App.1978).

■■■■ In this case the defendant's initial arrest for carrying a concealed weapon was based on the recovery of a woman's purse containing a gun from under defendant's chair; his female companion denied ownership of the purse, but it contained her identification. Defendant relies on *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), which holds that evidence obtained from an unconstitutional arrest is inadmissible. But, here, we need not decide the issue whether the arrest was illegal. The test whether evidence has been obtained from an unconstitutional police action is "whether granting establishment of the primary illegality, the evidence to which instant objection is made has come by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Id.* at 488, 83 S.Ct. at 417, quoting from Maguire, Evidence of Guilt, 221 (1959). In other words the admissibility depends on the existence of a "'causal connection between the illegality and the confession,'" *Dunaway v. State*, —— U.S. ——, ——, 99 S.Ct. 2248, 2259, 60 L.Ed.2d 824. (1979). The factors to be considered are "[t]he temporal proximity of the arrest and the confession, the presence of intervening circumstances, . . . and, particularly, the purpose and flagrancy of the official misconduct." *Id.* at 2259.

■■ Defendant's confession was not obtained or maculated by exploitation of an illegal arrest. The auto accident brought about the investigation of the auto's ownership which in turn led to the discovery of the murder and robbery. The investigation of the auto accident first revealed defendant's identity to the police. His association with VanDiver was apparent to the police prior to the auto accident when defendant entered the tavern. His possession of the victim's property acquired at his booking for the alleged illegal arrest did not lead to discovery of the crime. The only result of the purported illegal arrest was that defendant was available in police custody when the murder and robbery were discovered. The confessions were obtained after the crime was discovered and defendant was confronted with the discovery. It is clear that the confessions were obtained by means sufficiently distinguishable to be purged of the primary taint and hence may be used against the defendant. *See: State v. Olds, supra*. Thus, the admissibility of the confessions is not gauged by the legality of the arrest.

Defendant's final argument is that the trial court erred in not ordering a mistrial because of the prosecutor's closing remarks concerning the defendant's demeanor. The remarks were:

Ladies and gentleman, you heard the tape. You remember or don't remember what was in the tape. Yesterday while that tape was being played, myself and Mr. Richardson [defendant's attorney] were sitting over alongside watching the tape, also, and watching the defendant. As that tape was being played, you no doubt saw Herman Smith sat there covering his face.

Defendant argues that his actions were not reflective of guilt and therefore the prosecutor's comment was a reference to his failure to testify placing an impermissible burden on his constitutional privilege to remain silent.

■■■■ It is improper to comment on defendant's demeanor in a derogatory or incriminating manner during his forced presence in the courtroom. *State v. Jackson,*

444 S.W.2d 389 (Mo.1969). But here, the comment did not amount to a violation of defendant's privilege against self incrimination. There was no direct, unambiguous or certain reference to his failure to testify. *State v. Rothaus,* 530 S.W.2d 235 (Mo. banc 1975); *State v. Johnson,* 566 S.W.2d 510 (Mo.App.1978). Nor could any reasonably intelligent juror have construed it as such. *State v. Michaels,* 543 S.W.2d 245 (Mo.App. 1976). At most it pointed to a possible consciousness of guilt expressed by the defendant in burying his head in his hands. With regard to the oral argument, the trial court did sustain the defendant's objection, instructed the jury to disregard it and ordered it stricken from the record. The trial court has substantial discretion in refusing to declare a mistrial, particularly in view of its action taken here. *State v. Stapleton,* 518 S.W.2d 292 (Mo. banc 1975); *State v. Page,* 580 S.W.2d 315 (Mo.App.1979); *State v. Russ,* 574 S.W.2d 5 (Mo.App.1978). There was no abuse of discretion in the ruling on the motion for mistrial.

Judgment affirmed.

REINHARD, P. J., and CRIST, J., concur.