**STATE of Missouri, Respondent,**

v.

**Edward BATTLE, Appellant.**

**No. 39473.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Aug. 21, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 17, 1979.

Application to Transfer Denied
Nov. 14, 1979.

William J. Shaw, Public Defender, Patrick M. Sanders, Asst. Public Defender, S. Gerald Miller, Clayton, for appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Bruce E. Anderson, Asst. Attys. Gen., Jefferson City, George R. Westfall, Pros. Atty., Clayton, for respondent.

DOWD, Presiding Judge.

Edward Battle was convicted by a jury in St. Louis County of second degree murder and first degree robbery and sentenced to life imprisonment on each count. The sentences are to be served consecutively. Battle appeals.

On the snowy morning of January 7, 1976, Officer Fred Marquard of the University City Police Department observed the appellant walking behind a group of apartment buildings carrying a television set. When Marquard signaled that he wished to speak to the appellant, the latter "set down" the television and purported to assist a man who was working on his car's engine. When questioned by the Officer as to his presence in the neighborhood and his carrying the television, the appellant replied with inconsistent answers. First, appellant contended that he owned the set and was taking it to be fixed. Shortly, thereafter, appellant asserted that he was given the set by his employer, a Doctor Zuckerman. When another officer arrived, Marquard traced appellant's footprints in the freshly fallen show to a different building than the one appellant claimed to have exited. The officer failed to find any evidence of forcible entry into the apartments. Marquard then arrested appellant on suspicion of stealing from a dwelling.

Appellant was given his *Miranda* warnings and a pat down search. The pat down search revealed ten silver dollars and various items of jewelry in the appellant's possession. The police observed blood stains on appellant's clothing. Once at the police station appellant was also found to be in possession of a bank interest check payable to a Ruth Goldberg. Appellant explained that Mrs. Goldberg had given him the check. When the police could not reach Mrs. Goldberg to verify appellant's story, they contacted her children in hopes of gaining access to her apartment. Mrs. Goldberg was 73 years old and lived alone. Having been admitted to the apartment, the police found Mrs. Goldberg dead. She had been strangled with a wire coat hanger and stabbed through the throat with a knife. Appellant was indicted for the capital murder and first degree robbery of Rose Goldberg.

In this appeal, Battle contends the trial court erred in five respects.

In his first assignment of error, appellant contends that statements and evidence procured from him following his arrest should have been suppressed because his arrest was unlawful and not predicated on probable cause. Secondly, appellant contends that the trial court should have suppressed statements which he made to police after indicating that he wished the questioning be discontinued. Appellant's third conten-

tion is that the court erred in refusing to grant him a competency hearing after his counsel had contested the psychiatric reports' findings. The fourth issue raised by the appellant is that the trial court should have granted appellant's motion for a mistrial after the State had made allegedly prejudicial comments in its closing argument. Finally, the appellant contends that the court lacked jurisdiction since the appellant had pleaded not guilty by reasons of mental disease or defect and had never withdrawn or abandoned that plea.

■ The appellant first questions the legality of his warrantless arrest, claiming that no probable cause existed for the police to believe that a crime had been committed or that the appellant had committed it.

Officer Marquard was not required to have had probable cause for arrest when he asked Battle to step over to the police car during the initial detention. It is established that police can make an investigatory stop of a person on less grounds than would be required for probable cause for arrest. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Here, Officer Marquard observed the appellant walking behind an apartment building in the middle of a snowstorm carrying a television set. When the officer motioned for Battle to approach the police car, Battle set the television by the curb and began to act as if he were assisting a man who was working under the hood of a car. While this behavior would not satisfy probable cause requirements for arrest, it is sufficiently suspicious to warrant a brief investigatory stop under the *Terry* rationale. The grounds necessary for probable cause for arrest, however, need not have been established until Marquard actually arrested Battle.

■ In order to legally arrest Battle, Marquard must have had reasonable grounds to believe that a felony had been committed and that Battle had committed it. *State v. Caffey*, 436 S.W.2d 1 (Mo.1969). Although Marquard needed more than a mere suspicion that Battle had stolen from a dwelling, *State v. Hicks*, 515 S.W.2d 518 (Mo.1974) the practicalities of everyday life

must be considered. *State v. Dodson*, 491 S.W.2d 334 (Mo. banc 1973). The existence of probable cause should be determined case by case using a reasonable and prudent man standard. *State v. Dodson*, supra.

■ Here the information Marquard obtain during the investigatory stop provided him with the necessary grounds to reasonably believe that Battle had stolen from a dwelling. After Battle complied with Marquard's request to step over to the police car, Marquard inquired as to Battle's presence in the area and his possession of the television. Battle answered that he lived at 5271 Washington Avenue in St. Louis. This is approximately sixteen blocks from where he was stopped. He said that he brought the television from his home and was taking it to Wellston to be repaired. Marquard pointed out that they were a considerable distance out of the way from Washington Avenue to Wellston. Battle then changed his story and said that he had been doing some work at 740 and 746 Eastgate for a Dr. Zuckerman. He said that Dr. Zuckerman had given the television to him to have it repaired.

At that time another patrolman arrived on the scene and Officer Marquard asked him to run a pedigree check on the appellant. Marquard then traced Battle's footprints through the freshly fallen six-inch snow. Since Battle's were the only footprints visible, Marquard was able to follow them to the rear of an apartment building at 804 Eastgate. This address was approximately one block closer than the building Battle claimed to have exited. The officers then arrested Battle for stealing from a dwelling.

It was reasonable for Officer Marquard to become suspicious at the sight of a man carrying a television through the falling snow at the rear of an apartment building. As in *Terry v. Ohio*, supra, 392 U.S. at 23, 88 S.Ct. at 1881, "it would have been poor police work" for Marquard not to have briefly stopped appellant. The additional facts discovered during the investigatory stop provided the necessary probable cause

for a warrantless arrest for stealing from a dwelling. Since probable cause existed, the arrest was legal and there could be no taint on the information obtained as a result. Point one is ruled against the appellant.

 The appellant next argues that the court erred in overruling his motion to suppress statements he made after he had signed a written *Miranda* form indicating that he wished the questioning be discontinued.

The admissibility of statements obtained after a suspect has expressed a desire "to remain silent depends under *Miranda* on whether his right to cut off questioning was scrupulously honored". *Michigan v. Mosely*, 423 U.S. 96, 103, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). If the suspect makes a statement after questioning has been cut off, the burden is on the State to show by a preponderance of the evidence that he has made a knowing waiver of the *Miranda* safeguards in order for that statement to be admissible. *State v. Olds*, 569 S.W.2d 745 (Mo. banc 1978). A suspect can effectively waive his right to remain silent as to any statement which he volunteers. *State v. Olds,* supra. In the *Olds* case, a robbery suspect was being driven to jail while two police officers in the car carried on a conversation about a 200 pound Great Dane at the home of the robbery victim. When one Officer commented that it was the friendliest dog he had ever seen, the suspect agreed with him. The court found that the suspect had waived his right to remain silent since the statement was voluntarily made after his being informed of his rights and was not in response to any interrogation.

In the present case, after Battle indicated his desire to cut off questioning, the police took him to a cell without further communication. About one and one-half hours later, Battle, a black man, saw a black detective walk by and asked to see him. The detective asked Battle what he wanted and Battle answered that he wanted to tell him what had happened. The detective warned

Battle that he was a police officer and would testify to anything Battle told him. He also reminded Battle of the *Miranda* form he had signed. Despite these warnings, Battle made the incriminating statements[1] which were the subject of the motion to suppress. As appellant volunteered the statements after having been given his *Miranda* warnings, and having been reminded of his previous wish to remain silent, he waived his right to remain silent as to the statements made. The motion to suppress was properly overruled. Point two is ruled against the appellant.

The appellant's third point is that the trial court erred in refusing to grant a hearing to determine the appellant's competency to stand trial. It appears from the record, however, that a hearing was held. At one point in the record, the court, referring to evidence regarding appellant's competency, stated, "We went over this in the hearing on Friday with the doctor and the two licensed practical nurses, didn't we?" Later the court again referred to the competency hearing, stating:

"For the record I will make a finding of law based on the testimony we had last Friday from the medical doctor and the county jail social worker, two licensed practical nurses, and psychiatric reports from Fulton and from Missouri State Hospital on Arsenal Street, and other evidence before the Court, that the Court finds the matter of law is that the defendant is competent to stand trial, to assist in his own defense, if he chooses to, that is competent to stand trial."

Thus it is clear that a competency hearing was held and that the court, based on evidence adduced at the hearing, found the appellant competent to stand trial.

 The record does not include a transcript of what transpired at the hearing. The transcript should include everything needed to decide the issues which the appellant presents. *Ward v. State*, 451 S.W.2d 79 (Mo.1970). Since the appellant has the

---

1. Battle told the officer that he was present in the apartment with a Robert Jones who beat the victim and stabbed her with a knife and

that Battle then took the television set, money and jewelry from the apartment but that "he hadn't killed the woman."

burden of providing a complete transcript, *Jackson v. State*, 514 S.W.2d 532 (Mo.1974), this court cannot determine that the hearing, which was apparently held, fell short of the requirements of Section 552.020(6), VAMS without a record of the hearing being included in the transcript.

The fourth issue the appellant raises is that the trial court erred in denying appellant's motion for a mistrial after the prosecutor made certain allegedly prejudicial comments during closing arguments. The flaw in this argument is that none of the comments allegedly made by the prosecutor appear in the transcript. It has long been held that the trial transcript is binding on the reviewing court. *Peterson v. Kansas City Public Service Co.*, 259 S.W.2d 789 (Mo.1953). As a result, the comments complained of by appellant not having been substantiated by the record cannot be considered on appeal.

It is true that arguments which antagonize the jurors toward the defendant by suggesting that acquittal may risk their or their families' safety, affect substantial constitutional rights and as such are erroneous. *State v. Ellinger*, 549 S.W.2d 136 (Mo.App.1977). However, a search of the record reveals no such inflammatory remarks.

Essentially the argument of the prosecutor was in reference to the necessity of law enforcement as a deterrent to crime and also that juries have a responsibility to suppress crime. Such an argument is proper. *State v. Brauch*, 529 S.W.2d 926, 931 (Mo.App.1975); *State v. Schumacher*, 556 S.W.2d 199, 200 (Mo.App.1977). Accordingly, appellant's point is without merit.

The appellant finally contends that the trial court was without jurisdiction to hear this case because defendant never entered a not guilty plea and so was never properly arraigned. Appellant argues that since he pleaded not guilty by reason of mental disease or defect and never withdrew or abandoned that plea, the court was not authorized to adjudicate the guilt of defendant.

This contention lacks merit. The case on which appellant relies, *State v. Grantham*, 519 S.W.2d 19 (Mo. banc 1975) involved a different factual situation than exists here. In *Grantham*, the court held that the State cannot accept a plea of not guilty by reason of mental disease or defect when the defendant has also pleaded not guilty, and has not first withdrawn or abandoned the not guilty plea. This is in accordance with § 552.030 VAMS, which allows the State to accept a defense of mental disease or defect only if such a plea is the defendant's only defense and he files a written notice that he has no other defense.

Here the defendant was arraigned and entered a plea of not guilty by reason of mental disease or defect. However, this plea was never accepted by the State. Defendant Battle was then tried without explicitly entering a not guilty plea. Accordingly, § 546.020 VAMS is controlling. It holds that if a defendant fails to plead not guilty, his conviction will not be reversed if the trial was held as if he had in fact pleaded not guilty. Here the trial court did proceed as if appellant had pleaded not guilty. Thus, the judgment will not be disturbed.

Judgment affirmed.

CRIST and SATZ, JJ., concur.