STATE of Missouri, Appellant,

v.

Clifton S. SPARKLING, Respondent.

No. WD 73737.

Missouri Court of Appeals,
Western District.

Nov. 29, 2011.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Jan. 31, 2012.

Application for Transfer Denied
May 1, 2012.

Mark A. Richardson, Cole County Prosecuting Attorney, Anji Gandhi and Sarah V. Hamilton, Assistant Prosecuting Attorneys, Jefferson City, MO, for Appellant.

Margaret M. Johnston, Assistant State Public Defender, Columbia, MO, for Respondent.

Before Division II: MARK D. PFEIFFER, Presiding Judge, and JOSEPH M. ELLIS and VICTOR C. HOWARD, Judges.

MARK D. PFEIFFER, Presiding Judge.

Pursuant to section 547.200.1(3),[1] the State of Missouri filed this interlocutory appeal from an order of the Circuit Court of Cole County, Missouri ("trial court"), granting Clifton S. Sparkling's ("Sparkling") motion to suppress statements. We affirm.

### Factual and Procedural Background[2]

On June 16, 2010, Barret Wolters, a detective with the Jefferson City Police

---

1. All statutory references are to RSMo 2000, as updated through the 2009 Cumulative Supplement, unless otherwise indicated.

2. "In reviewing a ruling on a motion to suppress, an appellate court must view the facts and reasonable inferences from those facts in the light most favorable to the lower court's

Department, met with Sparkling, at Sparkling's request, at the Jefferson City Police Department. Sparkling had been arrested and was in custody. The interview lasted almost two hours and was recorded by a surveillance camera. Thereafter, Sparkling was indicted on four felony charges: forcible rape, § 566.030; forcible sodomy, § 566.060; kidnapping, § 565.110; and armed criminal action, § 571.015. Sparkling filed a motion to suppress the statements he made to Detective Wolters, asserting that he made them without having first been advised of his constitutional rights and that he did not knowingly and intelligently waive his rights.

At the hearing on Sparkling's suppression motion, Detective Wolters testified that before he interviewed Sparkling, he read Sparkling the *Miranda*[3] warning,[4] using the police department's "Statement of Rights" form. There are blank lines before each of the *Miranda* rights listed on the form where the person in custody can initial. Detective Wolters did not ask Sparkling to initial them (and Sparkling did not initial those lines), but he did direct Sparkling to sign the form and Sparkling complied with the detective's directive without reading the form. Detective Wolters asked Sparkling if he understood his rights, but the detective did not recall how Sparkling expressed his understanding. The detective stated that he had no way of knowing if Sparkling understood them.

Fortunately, there is a videotape of the *Miranda* portion of the interview with Sparkling. That videotape was introduced into evidence and has also been provided to this court as part of the record on appeal. As reflected in the trial court's order, the trial court viewed the videotape. We, too, have examined the videotape footage before arriving at our conclusion.

The video reflects that Sparkling was in custody, handcuffed, and present in an interrogation room with Detective Wolters. The video reflects that Detective Wolters read Sparkling his *Miranda* rights. However, when Detective Wolters asked Sparkling if he understood his rights, Sparkling made no audible reply or any physical gesture indicating he understood his rights.[5] Undaunted, Detective Wolters slid the *Miranda* form over to Sparkling and instructed him to "sign right there." Detective Wolters did not ask Sparkling if he was able to read, nor did Detective Wolters suggest to Sparkling that he could take the time to read the form Sparkling was signing—a form confirming that Sparkling had, in fact, read the form. The video reflects that the only thing Sparkling did in response to the directive from Detective Wolters was to sign the form where Wolters told him to sign. The video clearly reflects that Sparkling did not read the form he was instructed to sign by Detective Wolters. The trial court correctly

---

ruling and must disregard any contrary evidence or inferences." *State v. Wade*, 866 S.W.2d 908, 910 (Mo.App. W.D.1993) (citing *State v. Giffin*, 640 S.W.2d 128, 130 (Mo. banc 1982)).

3. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

4. Though the State argues that Sparkling had previously been Mirandized, the State offered no evidence of a prior *Miranda* warning prior to the warning which is the subject of this appeal.

5. In the State's appellate brief, the State provides transcript excerpts from the video reflecting that Sparkling knew how to provide audible responses, because he did so in response to other preliminary statements and questions by Detective Wolters. Yet, the State's transcript of the conversation between Detective Wolters and Sparkling reflects that Sparkling did *not* respond when asked if he *understood* the rights that had been read to him by Detective Wolters.

noted in its order that while the *Miranda* waiver form states, "I have read (or been read) the above statement of my rights and I understand each of those rights, as indicated by my initials," Sparkling did not initial on any of the lines next to the enumerated rights.

In its order, the trial court concluded that the State had not carried its burden to prove that Sparkling waived his *Miranda* rights with the full awareness of the nature of the rights he was abandoning and the consequences of such abandonment. The trial court noted that the State was relying on Sparkling's signature on the form as evidence that he understood his rights, but that such conclusion was inconsistent with the statement purportedly ratified by the signature, "as indicated by my initials," because there were no initials. The trial court concluded, "Either [Sparkling] 1) signed the form, not understanding what it said; or 2) signed the form, indicating that he had read or been read the enumerated rights, but did not initial each line, which by the plain language of the form, negates the conclusion that he understood each of those rights."

The trial court found that the State made no record that Sparkling understood his rights: "There is no indication that [Sparkling] could read and write English. [Sparkling] was not invited to read the statement and was not given time to read the form. He did not verbalize his understanding of the rights. He simply signed where he was told to sign." The trial court ordered Sparkling's statements suppressed because the State failed to show that his custodial statements were made as a result of a voluntary, knowing and intelligent waiver of his *Miranda* rights.

The State filed this interlocutory appeal.

## Standard of Review

■ "A trial court's order suppressing evidence is entitled to interlocutory appeal under section 547.200.1." *State v. Wilson,* 169 S.W.3d 870, 875 (Mo.App. W.D.2005). Our review of a trial court's order sustaining a motion to suppress is limited to determining whether or not substantial evidence supported the ruling. *Id.* The trial court's ruling on a motion to suppress will be reversed only if it is clearly erroneous and leaves us with a definite and firm impression that a mistake has been made. *Id.* We consider all the evidence and the reasonable inferences therefrom in the light most favorable to the trial court's ruling. *Id.*

## Analysis

■ In its sole Point, the State asserts that the trial court clearly erred in sustaining Sparkling's motion to suppress because the State proved by a preponderance of the evidence that, under the totality of the circumstances, Sparkling understood and voluntarily, knowingly and intelligently waived his *Miranda* rights.

■ In *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court held that custodial interrogation is inherently coercive and that an accused must receive specific warnings that he or she has the rights to remain silent and to receive assistance of counsel before and during questioning. A statement obtained from an accused during custodial interrogation is admissible only if the State establishes by a preponderance of the evidence that the accused validly waived the privilege against self-incrimination and the right to counsel. *Colorado v. Connelly,* 479 U.S. 157, 168, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). To establish that an accused has validly waived his or her *Miranda* rights, the State must demonstrate "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst,* 304 U.S. 458,

464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *see Miranda*, 384 U.S. at 475–79, 86 S.Ct. 1602. On review, "courts indulge every reasonable presumption against waiver of fundamental constitutional rights." *Zerbst*, 304 U.S. at 464, 58 S.Ct. 1019 (internal quotation omitted).

 The waiver inquiry "has two distinct dimensions." *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). "First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Id.* "Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* "Only if the 'totality of the circumstances surrounding the interrogation' reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Id.* (quoting *Fare v. Michael C.*, 442 U.S. 707, 725, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979)).

The voluntariness of Sparkling's waiver was not at issue.[6] As the trial court correctly acknowledged, this was not a case where law enforcement engaged in intimidation, coercion, or deception. Rather, Sparkling asserted that he did not knowingly and intelligently waive his *Miranda* rights.

 The issue before us is whether the State met its burden to establish waiver by a preponderance of the evidence. *Berghuis v. Thompkins*, —— U.S. ——, 130 S.Ct. 2250, 2261, 176 L.Ed.2d 1098 (2010) (citing *Connelly*, 479 U.S. at 168, 107 S.Ct. 515). "If the State establishes that a *Miranda* warning was given and the accused made an uncoerced statement, this showing, standing alone, is insufficient to demonstrate 'a valid waiver' of *Miranda* rights." *Id.* (quoting *Miranda*, 384 U.S. at 475, 86 S.Ct. 1602). "The prosecution must make the additional showing that the accused *understood* these rights." *Id.* Only where the prosecution shows that a *Miranda* warning was given and it was *fully understood* by the accused, does an accused's uncoerced statement establish an implied waiver of the right to remain silent. *Id.* at 2262.

The State contends that Sparkling's *Miranda* waiver was knowing and intelligent based upon the totality of the circumstances because he was read his *Miranda* rights; it was apparent during the inter-

---

**6.** In Suppression Exhibit 2, after reading the Statement of Rights to Sparkling, Detective Wolters told him that "even though this is at your request, you're asking to talk to me, we still have to do this [read Sparkling his *Miranda* rights] because you're in custody and you're talking to me. Okay?" The State relies on *State v. Olds*, 569 S.W.2d 745 (Mo. banc 1978), for the proposition that because Sparkling initiated contact with the detective, there was no *Miranda* violation. In *Olds*, the defendant was appealing his conviction of four counts of robbery in the first degree with a dangerous and deadly weapon. 569 S.W.2d at 746. He moved to suppress his incriminating statement made immediately after he was taken into custody, after receiving the *Miranda* warnings, and while being transported to jail. *Id.* The court held that by volunteering his statement after being Mirandized and not in response to any interrogation, the defendant waived his right to remain silent, and no *Miranda* violation occurred. *Id.* at 747. The issue in *Olds* was the voluntariness of the defendant's statement in the context of an unlawful arrest and whether the officer's statement to his fellow officer was an attempt to exert pressure on the defendant to confess. *Id.* at 748. *Olds* did not address the distinct question of whether an accused knowingly and intelligently waived his *Miranda* rights, which is the issue in this appeal. As such, *Olds* is not controlling here. In this case, the focus is whether, after the *Miranda* warning was administered, the detective ensured that Sparkling understood his rights.

view that he wrote, spoke, and understood English; he signed the *Miranda* form; he spoke intelligently about his case, he contemplated getting an attorney, he attempted to deflect blame from himself to his codefendant, he offered no evidence regarding his lack of understanding, and he requested the interview with the detective.[7] Sparkling responds that the State did not satisfy its burden of proving a knowing and intelligent waiver.

 The question of the validity of a waiver is one of fact, and we will not overturn the trial court's finding unless it is clearly erroneous. *State v. Powell*, 798 S.W.2d 709, 713 (Mo. banc 1990). "Conflicts in the evidence and the credibility of witnesses are matters for the trial court to resolve." *Id.* The trial court based its conclusion that the State failed to show that Sparkling's custodial statements were made as a result of a knowing and voluntary waiver of his *Miranda* rights on the evidence presented at the suppression hearing. In making the determination whether a waiver is knowing and intelligent, courts must examine the totality of the circumstances surrounding the interrogation, "including the background, experience, and conduct of the accused." *Zerbst*,

304 U.S. at 464, 58 S.Ct. 1019; *see State v. Bucklew*, 973 S.W.2d 83, 90 (Mo. banc 1998).

The trial court noted that the interview tape excerpt showed that when Detective Wolters asked Sparkling if he understood the rights that the detective had just read to him, Sparkling made no audible reply or physical gesture indicating he understood his rights. Similarly, when the detective told Sparkling to sign the Statement of Rights form, Sparkling did not appear to read the form, and he did not review and initial beside each enumerated right to indicate his understanding thereof. The detective did not inquire whether Sparkling could read or write English, did not invite Sparkling to read the Statement of Rights form, did not give him time to do so, and did not ask Sparkling to verbalize his understanding of the rights. The State introduced no evidence of Sparkling's age, experience, education, background, intelligence, his familiarity with the criminal justice system, or whether he had the basic intellectual capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights.[8] *Fare*, 442 U.S. at

---

7. Combined, Suppression Exhibits 2 and 3 show approximately three minutes of a two-hour interview. The record is silent as to what transpired during the remainder of the interview. In a case where an accused invoked his right to counsel but later initiated communication with the police, the U.S. Supreme Court noted:

> If, as frequently would occur in the course of a meeting initiated by the accused, the conversation is not wholly one-sided, it is likely that the officers will say or do something that clearly would be 'interrogation.' In that event, the question would be whether a valid waiver of the right to counsel and the right to silence had occurred, that is, whether the purported waiver was knowing and intelligent and found to be so under the totality of the circumstances, including the

necessary fact that the accused, not the police, reopened the dialogue with the authorities.

*Edwards v. Arizona*, 451 U.S. 477, 486 n. 9, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

8. Had the State presented evidence on these topics, the result may very well have been different. In that circumstance, the trial court would have been presented a potentially different "totality" of evidence on the topic of whether Sparkling's waiver was both knowing and intelligent. However, as the trial court pointed out, the State was primarily relying upon Sparkling's signature on a preprinted police department form as its evidence of waiver and the video of the circumstances of Sparkling's signature did not persuasively depict a knowing and intelligent waiver by Sparkling.

725, 99 S.Ct. 2560. Furthermore, the detective could articulate no basis for concluding that Sparkling understood his rights.

After a thorough review of the entire record, including the video excerpts of Sparkling's interview with Detective Wolters, we conclude that the trial court's determination—that under the totality of the circumstances surrounding his statements, Sparkling did not knowingly and intelligently waive his rights—is supported by substantial evidence and was not clearly erroneous. Consequently, the suppression of Sparkling's statements by the trial court was not error.

Point denied.

### Conclusion

The trial court's suppression order is affirmed.

JOSEPH M. ELLIS and VICTOR C. HOWARD, Judges, concur.