**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Carl Effriam ELLIS, Defendant-Appellant.**

**No. 71–1333.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 19, 1971.

Decided April 21, 1972.

---

James M. Reed, Jr., Kansas City, Mo., for defendant-appellant.

Anthony P. Nugent, Jr., Asst. U. S. Atty., Bert C. Hurn, U. S. Atty., Kansas City, Mo., for plaintiff-appellee.

Before GIBSON and HEANEY, Circuit Judges, and VAN PELT, Senior District Judge.*

VAN PELT, Senior District Judge.

Carl Effriam Ellis was found guilty by a jury of the transporting of a motor vehicle in interstate commerce, knowing the same to have been stolen in violation of 18 U.S.C. § 2312 (1970).

The sole issue on this appeal is whether appellant, while a defendant under arrest, knowingly, understandingly and intelligently waived his rights as measured by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The issue arose upon a motion to suppress certain statements made by appellant to an F.B.I. agent. A hearing was had on the motion at the beginning of appellant's trial. Appellant and the F. B.I. agent testified. At the end of the hearing, the trial judge ruled that defendant's motion to suppress would be denied. Before the agent testified at the trial, the judge ruled that the statements were voluntarily made.

Appellant was arrested October 3, 1970, while driving a brown 1969 Javelin automobile in the wrong direction on a one-way street in St. Robert, Missouri. Because he could not show a valid driver's license or a registration for the car, he was issued a traffic ticket and taken to jail. A check of the license and registration numbers on the car showed that it had been stolen in Chicago, Illinois.

Upon receiving the information that the car had been stolen, the St. Robert Police Department informed George Scruggs, a special agent for the F.B.I., who went to the St. Robert jail on October 4th to question the defendant. It is undisputed that the agent read to the defendant the Miranda warnings and a waiver of right to counsel. It is at this point that the dispute arises. The agent claims he then asked the defendant to sign the waiver of right to counsel and the defendant refused, saying he did not care to sign anything "until he had consulted an attorney." The agent testified that he then asked the defendant if he

---

* Senior District Judge for the District of Nebraska sitting by designation.

was nevertheless willing to talk with him, and the defendant said that he was. The defendant then told the agent that the car in question belonged to his girl friend in Chicago, Illinois, and that she had had the car in her possession at least as early as August 20th or 21st, 1970. The agent then told the defendant he didn't think that statement was the truth since those dates preceded the date the car was reported stolen in Chicago. Confronted with this conflict, the defendant, according to the agent, said "It looks like I'm deeper in this than I thought." The defendant then said he had bought the car in Chicago from a man who had stolen it in an armed robbery. Appellant said he knew the car was stolen when he bought it. Appellant also stated that he had transported the car himself from Chicago to St. Robert, Missouri. The agent denied throughout that the defendant ever asked for an attorney. The St. Robert chief of police was also present during the questioning but his testimony at the trial did not relate to this matter.

The defendant, as above indicated, testified at the hearing on the motion to suppress. He did not testify at the trial, probably because of his past criminal record (T. 109). His version of his conversation with the F.B.I. agent is

"A. He handed me a waiver, you know, and asked me to sign it to waive all rights. I told him I wouldn't sign it. I asked him for an attorney. Then he proceeded to ask me various questions in which I gave him conflicting answers to. I asked him again for an attorney, and he continued, by virtue of the fact I had been sick and was withdrawing from a drug, I just wanted to get it over with, you know. So I would say anything.

Q. At any time did the agent offer you an explanation of why you couldn't have an attorney present at the time?

A. No, he did not." (T. 41)

Thus, there was presented to the trial judge a direct conflict as to whether appellant had requested an attorney.

The trial judge found that the statements were "made voluntarily without any coercion of any kind, and after the proper *Miranda* warning . . . ." (T. 97) At that time counsel for appellant was also advised by the trial judge: "[Y]ou can submit to the jury instructions that they weren't voluntary, if you want to." No instructions on voluntariness were requested and none were given.

At the trial, objection was made to receiving in evidence the statements made to the F.B.I. agent and above quoted, on the ground that "any statements made by Mr. Ellis were obtained in violation of his rights." The objection was "denied."

Following the conclusion of the testimony of the prosecution there was a conference in the judge's chambers at which appellant was present. He was examined by the court as to his right to testify and his reasons for not testifying. He did not testify and offered no evidence.

It would appear that counsel for appellant, and probably the court, believed that no instruction on the voluntariness of the statements could be given if the defendant did not take the stand and testify on the merits of the case against him. As above noted, no request was made for an instruction on the voluntariness of the statements and none was given.

The law is clear. *Miranda* teaches

"If . . . [the defendant] indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. . . ." 384 U.S. at 444, 445, 86 S.Ct. at 1612

"If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly

and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel.

. . .

"An express statement that the individual is willing to make a statement and does not want an attorney followed closely by a statement could constitute a waiver. . . ." 384 U.S. at 475, 86 S.Ct. at 1628 (citations omitted)

It is clear from reading the record that the trial judge, after hearing the testimony of the F.B.I. agent and the appellant, adopted the F.B.I. agent's version of the conversation and gave no weight to appellant's claim that he had asked for an attorney.

In a somewhat similar case, Howard v. Swenson, 404 F.2d 469 (8th Cir. 1968), this court said:

"The question of voluntariness necessarily presented an issue of fact, the resolution of which turned on the credibility of the witnesses. The competence of the experienced trial judge to fairly and accurately appraise the oral testimony is not and could not in sincerity be challenged. It is not our function to substitute our judgment for that of the trier of the facts." 404 F.2d at 472

Appellant places great emphasis on the fact that he refused to sign the waiver form. A refusal to sign such a waiver is, however, only one factor to be considered in determining whether the defendant waived his rights. It does not preclude a finding that those rights were effectively waived. Klingler v. United States, 409 F.2d 299, 308 (8th Cir.), cert. denied, 396 U.S. 859, 90 S.Ct. 127, 24 L.Ed.2d 110 (1969); United States v. McNeil, 140 U.S.App.D.C. 3, 433 F.2d 1109, 1113 (1969). *Klingler, supra,* is similar to the instant case in that in *Klingler* the defendant had also refused to sign a waiver, with the explanation that he didn't "sign anything without a lawyer." Nevertheless, he went on to make certain incriminating statements. When he stated that "he didn't want to talk any more," the questioning stopped. Upon these facts, this court held that the defendant's refusal to sign the waiver was not fatal, and that he had "voluntarily, knowingly and intelligently" waived his right to counsel. We believe this is true of the defendant here.

Appellant relies upon Frazier v. United States, 136 U.S.App.D.C. 180, 419 F.2d 1161 (1969), and particularly refers to the opinion of Judge Burger, now the Chief Justice, concurring in part and dissenting in part. We do not find the opinion of the now Chief Justice or the majority opinion of Judge Robinson helpful to appellant because the majority felt that the police sergeant's testimony "suggests powerfully that the waiver was not understandingly made" and "casts doubt on whether it was voluntarily made." In *Frazier,* the government offered no evidence to dispel these doubts. Here we have a direct conflict as to whether appellant actually asked for a lawyer. The doubts raised by appellant's version were dispelled by the agent's testimony and by the trial judge believing the agent and disbelieving Ellis.

It should also be noted in this case that there was no coercion, physical or mental. The questioning did not take place over a long period of time nor were there a great number of questions asked. The defendant was not threatened or tricked. The language of *Klingler, supra,* 409 F.2d at 308, that the fact that the defendant "chose of his own free will to speak without the assistance of counsel should give him no cause for complaint" is applicable here. We affirm the trial court.