STATE of Missouri,
Plaintiff-Respondent,

v.

Jesse Edward HULL,
Defendant-Appellant.

No. 11045.

Missouri Court of Appeals,
Southern District,
Division Three.

Feb. 19, 1980.

John Ashcroft, Atty. Gen., Steven Scott Clark, Mary C. P. Pincus, Asst. Attys. Gen., Jefferson City, for plaintiff-respondent.

Joe Perry Rice, III, David B. Summers, Rice & Summers, Chaffee, for defendant-appellant.

MAUS, Judge.

The appellant was charged as a second offender with first degree robbery of Kenneth Dale Wren. A jury returned a verdict of guilty and the court sentenced him to six years imprisonment. He appeals alleging the trial court erred in four respects. A brief summary of the facts established by the state's evidence will provide a sufficient background against which these allegations of error may be considered.

On October 15, 1977, in Sikeston, Missouri, between 9:00 p. m. and 10:00 p. m. Wren parked his car in a parking lot for the purpose of picking up his mother who worked at a restaurant across the street. As he started to walk to the restaurant, he was accosted by two young black men. They asked for a ride and mentioned the name of a club. When he declined, one of the two brandished a handgun. At the direction of his assailants, Wren drove about Sikeston for 15 to 20 minutes. Then, at their direction, he drove toward Charleston. After driving 5 to 7 miles, in compliance with his assailants' command, he stopped, got out and started walking. The two drove off. Later that night Wren's automobile was found at a night club near Wyatt, Missouri, and the appellant was arrested at that night club. The appellant was taken to the police station in Sikeston where he made an incriminating statement. When the arresting officer, who had not searched the appellant, returned to his automobile from the station, he found a handgun between the seat in which the appellant had been seated and the door. Wren identified the appellant as one of his assailants. The appellant offered no evidence.

The appellant's motion to suppress was heard and determined the day before the trial. By this motion the appellant sought to suppress: (1) Wren's identification of him because of an alleged one-on-one show up; (2) his incriminating statement because of the absence of an effective waiver of his privilege against self-incrimination and his right to counsel; and (3) the handgun because it was not linked to the appellant. At the hearing on the motion the officer at the station testified concerning the circumstances of the incriminating statement; Wren testified concerning his identification; and the appellant testified only concerning the identification. The motion was overruled.

■ The appellant's first point is that the trial court erred in not suppressing Wren's in-court identification because that identification was tainted by an improper one-on-one "show up". The appellant testified that the day of his preliminary hearing he was being held in a room with a white and an albino; prior to the hearing the prosecutor and Wren stopped in front of the door to that room; and when the prosecutor called him by name, he stood up and in response to the prosecutor's question, was identified by Wren. On this issue, Wren testified that the room in question was on the way to the bathroom. He did walk by on two occasions, once with the assistant prosecutor, and saw the defendant sitting there. He denied the show up occurred and denied there was any discussion with the assistant prosecutor concerning identification. Concerning identification, Wren testified: he had no problem in seeing the appellant as they drove through lighted areas of Sikeston, when they walked through a lighted area of the parking lot and when the appellant demanded his billfold and that he identified the appellant at the preliminary hearing. At the motion hearing "with an absolute confidence" he identified the appellant from what he remembered from the night of October 15th. It was the duty of the trial court to determine the credibility of the witnesses, *State v. Alewine*, 474 S.W.2d 848 (Mo.1972), and he did so by rejecting the testimony of the appellant. The trial court did not err in not suppressing Wren's identification.

The appellant's second point is that the trial court erred in not suppressing the evidence of his incriminating statement. The only evidence concerning the circumstances of the statement was the testimony of the Sikeston officer in charge of criminal investigation who talked with the appellant in the booking room. The officer testified that when he entered the room he identified himself and informed the appellant he wanted to ask appellant some questions about an armed robbery that occurred at the restaurant. But, he added, before he asked him any questions he would read the appellant his rights and would like for him to sign a waiver. The appellant responded that he wouldn't sign anything until he saw a lawyer. The officer then read the appellant the *Miranda* warning and told the appellant if he knew anything about it the officer would like to have his cooperation. The appellant replied he wanted to cooperate, but wouldn't give a signed statement because the last time he signed a statement he went to prison. The officer then asked some questions which resulted in the incriminating statements. At no time did the appellant indicate he wanted a lawyer. The appellant argues that these circumstances conclusively establish the appellant did not effectively waive his right to remain silent or his right to counsel.

■ It is clearly established that a waiver of those rights need not be by an express declaration. "[T]he question of waiver must be determined on 'the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused.'" *North Carolina v. Butler*, 441 U.S. 369, 374, 99 S.Ct. 1755, 1758, 60 L.Ed.2d 286, 293 (1979). Or put another way: "Evidence that he refused to sign the waiver is a matter for consideration in the determination of the legal voluntariness of the statement in the light of all of the surrounding circumstances. . . . '[I]t becomes necessary to look at all the circumstances surrounding the interrogation to ascertain whether defendant's refusal to sign a waiver demonstrated that he was unwilling to forego his constitutional right to remain silent.'" *State v. Clark*, 592 S.W.2d 709, 716 (Mo. banc 1979); for the opinion of Missouri Court of Appeals, Western District, see 552 S.W.2d 256, 262.

■ Just as the execution of an express written declaration of waiver does not conclusively establish a voluntary relinquishment, a refusal to sign such a written declaration does not necessarily preclude an oral or an implied waiver. *State v. Sterling*, 536 S.W.2d 843 (Mo.App.1976); *North Carolina v. Butler*, supra.

Such a waiver has been found to exist in a number of cases involving circumstances

similar to this case. *North Carolina v. Butler,* supra, *441 U.S. 369, 371, 99 S.Ct. 1755, 1756, 60 L.Ed.2d 286, 291, in which the accused said "I will talk to you, but I am not signing any form";* State v. Auger, *434 S.W.2d 1, 3 (Mo.1968), in which the accused said his former attorney always told him not to sign anything but followed with "he didn't mind talking about it";* State v. Clark, *supra, in which the accused, who had talked to an attorney, declined to sign the waiver because he had been advised not to do so;* State v. Sterling, *supra, in which the accused said he didn't want to sign any report at the time;* United States v. Zamarripa, *544 F.2d 978 (8th Cir. 1976), in which the accused refused to sign but agreed to talk; and* United States v. Ellis, *457 F.2d 1204 (8th Cir. 1972), in which the accused wouldn't sign anything until he consulted an attorney, but was willing to talk.*

█ In this case the appellant had been convicted of a previous felony and he was not inexperienced in criminal procedure. He had been given the *Miranda* warning before arriving at the police station, where it was repeated. There is no evidence or assertion that he did not fully understand that admonition. There isn't the slightest hint that the appellant's faculties were impaired or that he was acting from coercion. He did not ask for a lawyer. The questions were few and the answers were freely given. The language of *United States v. Ellis, supra,* is dispositive of this issue:

A refusal to sign such a waiver is, however, only one factor to be considered in determining whether the defendant waived his rights. It does not preclude a finding that those rights were effectively waived. *Klingler v. United States,* 409 F.2d 299, 308 (8th Cir.), . . . . *Klingler, supra,* is similar to the instant case in that in *Klingler* the defendant had also refused to sign a waiver, with the explanation that he didn't "sign anything without a lawyer." Nevertheless, he went on to make certain incriminating statements. When he stated that "he didn't want to talk anymore," the questioning stopped.

Upon these facts, this court held that the defendant's refusal to sign the waiver was not fatal, and that he had "voluntarily, knowingly and intelligently" waived his right to counsel. We believe this is true of the defendant here. *United States v. Ellis, supra,* 457 F.2d at 1207.

In a similar vein the appellant also complains that the trial court did not make an express finding the incriminating statements were voluntary, citing *State v. Auger, supra.* In that case the court did, before opinion, order a further hearing for the purpose of an express finding concerning whether or not the defendant's statements were voluntary. However, that case does not mandate that procedure where the required finding is otherwise apparent from the record. Nor does *State v. Olds,* 569 S.W.2d 745 (Mo. banc 1978), establish that the record in this case does not reflect the required finding. In *Olds,* an issue was raised by the uncontroverted testimony of the defendant that he asserted his right to counsel, but the "State persisted in the questioning which renders the waiver and the subsequent statements inadmissible." *State v. Olds, supra,* 569 S.W.2d at 752. The record was deemed deficient because this testimony was uncontroverted and the record did not by a general finding of voluntariness affirmatively show the only basis upon which that general finding could have been reached, i. e. a determination the defendant's testimony was not worthy of belief. In this case, the only evidence concerning the circumstances of the statement was the uncontroverted testimony of the officer on the basis of which the trial court could properly conclude the statements were voluntary. Compare *State v. Monteer,* 467 S.W.2d 48 (Mo. banc 1971), where the testimony was conflicting and a general finding of voluntariness was sufficient on the issue of whether or not the *Miranda* warning had been given.

█ The standards for the determination of voluntariness [1] required by *Jackson*

---

1. A conclusion of admissibility may be the equivalent of voluntariness. "Only a single word is missing, the court, unfortunately, did not in the italicized clause employ the word

*v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, 1 A.L.R.3d 1205 (1964) have been appropriately summarized.

The court noted in *Jackson v. Denno, supra,* 378 U.S. 378, fn. 8, 84 S.Ct. at 1781, that in jurisdictions following the Massachusetts rule, "the record will show the judge's conclusion in this regard (voluntariness) and his findings upon the underlying facts may be express or ascertainable from the record." In *Sims v. Georgia,* 385 U.S. 538, 544, 87 S.Ct. 639, 643, 17 L.Ed.2d 593, the court stated the duty of the trial court as follows: "Although the judge need not make formal findings of fact or write an opinion, his conclusion that the confession is voluntary must appear from the record with unmistakable clarity." *State v. Monteer, supra,* 467 S.W.2d at 51.

Often an order that a motion to suppress is denied or overruled will not meet these standards. But, the sufficiency of the trial court's findings need not be determined solely from the dispositive order. The whole record may be considered. "As the Court indicated in *Jackson* and *Sims,* however, an express ruling on voluntariness is not always required. On the contrary, a ruling on voluntariness can be inferred from the record as a whole." *United States v. Medina,* 552 F.2d 181, 186 (7th Cir. 1977) cert. den. 434 U.S. 389, 98 S.Ct. 132, 54 L.Ed.2d 102. "However, we are not limited to looking only at the district court's one sentence conclusion . . .." *United States v. Gardner,* 516 F.2d 334, 340 (7th Cir. 1975) cert. den. 434 U.S. 389, 96 S.Ct. 118, 46 L.Ed.2d 89. "[B]ut the United States Supreme Court has required only that actual findings upon which the trial court's ultimate conclusion of voluntariness is based be 'ascertainable from the record.'" *State v. Monteer, supra,* 467 S.W.2d at 54. On this basis orders denying or overruling a motion to suppress have been held to sufficiently imply the findings upon which the conclusion of admissibility or voluntariness

is based. For example, *Leland v. Wainwright,* 569 F.2d 1371 (5th Cir. 1978), in which the state court merely denied the motion; *United States v. Medina, supra,* in which the district judge at the suppression hearing took the matter under advisement and at the trial merely admitted the incriminating evidence; *United States v. Davis,* 532 F.2d 22, 26 (7th Cir. 1976), in which the district judge referred to an erroneous burden of proof and announced "[I] deny the motion to suppress"; *United States v. Gardner, supra,* 516 F.2d at 340, "The motion to suppress is overruled"; and *United States v. Chapman,* 448 F.2d 1381, 1386 (3rd Cir. 1971), "I find the statement voluntary". Also see *United States v. Carter,* 569 F.2d 801 (4th Cir. 1977), a court tried case, in which the district court merely admitted the statements in evidence.

In this case the issue of waiver was drawn by the motion to suppress. *State v. Edwards,* 435 S.W.2d 1 (Mo.1968); *State v. Harris,* 594 S.W.2d 658 (Mo.App.1980). For the importance of an issue being defined by the pleadings, evidence or even argument of counsel, see *United States v. Gardner, supra,* and *United States v. Medina, supra.* The trial court at the opening of the suppression hearing announced the burden was upon the state. At the conclusion of the parties' examination of the interrogating officer, questions by the trial court established the exact language read to the defendant before any questions were asked and further established that at no time did the appellant indicate he wanted a lawyer or wanted time to talk to one. For the importance of the record in demonstrating the trial court's understanding of the issues see *United States v. Chapman, supra.* "There is no reason to doubt that the trial judge understood the nature and purpose of the suppression hearing." *United States v. Medina, supra,* 522 F.2d at 185. The rationale of the cases cited above, the required

'voluntary,' nevertheless, the meaning and intent are implicitly plain." *State v. Stidham,* 449 S.W.2d 634, 643 (Mo. 1970). This point

was not passed on in *Swenson v. Stidham,* 409 U.S. 224, 93 S.Ct. 359, 34 L.Ed.2d 431 (1972), in which *State v. Stidham, supra,* was upheld.

findings being necessarily implied in the conclusion of voluntariness or admissibility, is particularly applicable to this case. The issue was sharply drawn and the evidence on that issue supporting voluntariness was uncontroverted. "Although it would have been the better practice for the court to state that it found the statements to be voluntary by the preponderance of the evidence and to give its reasons for so concluding . . . we find that the court considered the appropriate *Miranda* requirements, and in light of the record, the court's ruling was not inadequate." *United States v. Gardner, supra,* 516 F.2d at 341.

 The appellant next argues that the trial court erred in not sustaining his motion for a new trial because the verdict directing instruction submitted Wren's ownership of the automobile and the evidence did not support that submission. Without objection Wren testified, "I got out of my car", he "had" a 1974 Nova, and he did not see "his" car for four days. His ownership was not questioned at the trial. In the context in which given this testimony amounted to a declaration of ownership. The best evidence rule is not applicable and the proof was sufficient. *State v. Curry,* 473 S.W.2d 747 (Mo.1971); *State v. Merritt,* 542 S.W.2d 14 (Mo.App.1976).

 The appellant's last point is that, even though the issue is first raised on appeal, the amended information under which he was tried is fatally defective because it did not set forth "the section of the Revised Statutes of Missouri which proscribes the conduct charged" as required by V.A.M.R. Crim. Rule 24.01(a). The amended information is not subject to such an attack. *State v. Tierney,* 584 S.W.2d 618 (Mo.App.1979). Also see *State v. Umfleet,* 587 S.W.2d 612 (Mo.App.1979).

The judgment is affirmed.

BILLINGS, P. J., and GREENE and PREWITT, JJ., concur.