**STATE of Missouri, Plaintiff-Respondent,**

v.

**Ronald L. BOYER, Defendant-Appellant.**

**No. 43408.**

Missouri Court of Appeals,
Eastern District,
Division One.

Jan. 4, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Denied
Feb. 10, 1983.

Application to Transfer Denied
March 29, 1983.

Daniel Reardon, Jr., Henry Robertson, St. Louis, for defendant-appellant.

Rosalynn Van Heest, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SIMON, Presiding Judge.

Appellant, Ronald L. Boyer, appeals from a conviction of murder in the second degree pursuant to a jury verdict. At the time of the trial, under the Missouri Criminal Code § 557.036.2 RSMo (1978), if the jury could not agree on punishment, the trial court assessed punishment. Pursuant to this section, the trial court sentenced Boyer to a twenty year term of imprisonment.

On appeal, Boyer raises three points of error. First, that the trial court erred in giving jury instruction # 9 patterned after MAI–CR 2d 15.18 on conventional manslaughter because the instruction failed to submit to the jury the issue of criminal intent. According to his reasoning if the instruction included the intent element, he would have been found guilty of manslaughter rather than second degree murder. Second, that the trial court erred in overruling his motion to suppress his confession, thereby violating his constitutional rights under the fourth, fifth and fourteenth amendments of the United States Constitution. Third, that the trial court erred in failing to make clear its ruling as to the voluntariness of the confession. We affirm.

On appeal, the evidence and its reasonable inferences shall be examined in a light most favorable to the State; all contrary evidence will be disregarded unless it supports the verdict. *State v. Franco,* 544 S.W.2d 533, 534[1] (Mo. banc 1976), *cert. denied sub nom. Franco v. Missouri,* 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977).

Applying this standard, we find the facts of this case are as follows: On the evening of December 7, Boyer, his employer, Guy Roth, and two female companions went out on a date. During the course of the evening, they visited two bars at which Boyer consumed a large quantity of beer, peppermint schnapps and whiskey. At approximately 12:30 a.m., the foursome went to an all night bar-b-que, picked up some food and returned to Boyer's apartment. Upon their arrival, Boyer awakened his roommate, Clifford Koons (Koons), to ask him if he wanted to eat, but Koons declined the invitation. The foursome continued drinking beer and began eating the food.

Shortly after they began eating, Boyer went into the bedroom, laid on the bed and fell asleep. The other three individuals finished consuming the food and the beer, left Boyer's apartment and went home.

At approximately 4:00 a.m., Boyer woke Koons and told him that he had just gone over to Martha Brunjes' (Brunjes) apartment to ask her not to report him to the landlord for making loud noises. Boyer feared that if the landlord found out about the noise and the fact that his parents no longer lived in the apartment, he would be evicted. Boyer told Koons that he feared that when he confronted Brunjes, he had killed her by kicking and choking her. Boyer also told Koons that he had taken some jewelry from Brunjes, which he had hidden in the vent in their apartment. Boyer told Koons, "Don't tell anybody. We're brothers, don't tell anybody."

Shortly thereafter Boyer went across the hall to another apartment to have the neighbor call the police to report that loud noises, banging and screaming were coming from Brunjes' apartment. A patrolman arrived at the scene and inspected the exterior of Brunjes' apartment, with Boyer. Having found no sign of trouble, the patrolman left; however, the patrolman wrote a note for the police to re-check the apartment.

Boyer was scheduled to work on this Saturday morning; however, when Roth, his employer, came to pick him up at 5:30 a.m., he told Boyer to stay at home because of his apparent inebriated condition.

At 9:30 p.m., Saturday, two officers arrived to re-check the Brunjes' apartment. Upon receiving no answer to the door bell, the officers gained entry by breaking a small window next to the door lock. Upon entering, the officers, accompanied by Boyer, found the body of Brunjes in the bedroom, lying between the bed and the wall. The officers directed Boyer to leave the apartment in order to keep the area secure for the evidence technicians.

An autopsy performed by Dr. Joseph Sapala, a forensic pathologist, indicated the cause of death as hemorrhagic shock. External examination revealed that Brunjes had suffered multiple fractured ribs, large external bruises of the face and body and a one inch cut on the lip. An internal examination revealed hemorrhaging in each body cavity caused by lacerations to the lungs, liver and diaphragm. Dr. Sapala concluded that the injuries were caused by multiple blunt trauma consistent with infliction by a punch made by a human fist. Testimony in the record indicates that Boyer was a boxer of considerable skill.

Shortly after the death of Brunjes, Koons moved out of Boyer's apartment and back to his parents' home. Subsequently, Koons went to the police and told them of Boyer's confession of murder and robbery of Martha Brunjes.

The police then went to look for Boyer at his place of employment on Produce Row. Not finding him at work, the officers left a message that they were looking for him and went into a nearby coffee shop. Shortly thereafter, Boyer, after learning that the detectives were looking for him, went to

the coffee shop. The detectives asked Boyer to accompany them to headquarters to discuss the circumstances surrounding Brunjes' death. Boyer willingly accompanied the officers. At police headquarters, he was placed in an interrogation room after being given the required *Miranda* warnings. Boyer had not been arrested or handcuffed.

After a few questions, Boyer consented to listening to the statement made by Koons. Upon Boyer's inquiry about what would happen to him, the detectives told him he would be arrested and charged with murder and robbery. After learning that the charges would be placed against him, he admitted that he beat the victim and took jewelry from her apartment. He consented to putting a full statement on videotape, after again receiving his *Miranda* rights. The videotaped statement contained a waiver of his *Miranda* rights, a confession of the beating and also included an admission that he had taken jewelry from the victim, which he later hid in his sister's home inside a television.

This videotaped statement was the basis for Boyer's arrest. Prior to the trial, a preliminary motion to suppress the confession was overruled. The trial court made no finding as to voluntariness.

During trial, the officers testified that Boyer did not appear intoxicated on the day the videotaped confession was made. Additionally, a psychiatrist, who was a witness for the defense, listened to the statement and testified that Boyer's answers were appropriate to the subject matter of the questions and that Boyer appeared to have his faculties about him.

■ Appellant's first point of error alleges that the court's submission of the conventional manslaughter instruction, MAI–CR 2d 15.18, prevented the jury from considering the issue of criminal intent in connection with manslaughter. Boyer contends that if the intent element had been present in the manslaughter instruction he would have been found guilty of that offense rather than second degree murder. We find no substance to this argument.

Manslaughter is defined as *"[e]very killing of a human being* by the act, procurement, or culpable negligence of another, *not herein declared to be murder or excusable or justifiable homicide . . .".* Section 565.-005 RSMo (1978). (emphasis added).

Criminal intent is not a necessary element of manslaughter in light of the fact that manslaughter under § 565.005 RSMo (1978) is a residual offense and covers all homicides, which are not capital, first or second degree murder and where the homicide is not excusable or justifiable. *State v. Ericson,* 638 S.W.2d 806, 807–808[2] (Mo. App.1982); *State v. Eldridge,* 564 S.W.2d 603, 605–606[7] (Mo.App.1978).

MAI–CR 2d 15.18 clearly tracks the statute; therefore, we find that Boyer was not prejudiced by its use. *Id.* at 606[8]. Boyer's first point is without merit.

■ Next, we must consider Boyer's second point, i.e. whether the trial court erred in admitting his videotaped confession into evidence.

Initially, Boyer contends that he was illegally detained by police during their initial interrogation at police headquarters, and any statement made by him during this period of detention should be suppressed.

In this instance, the arrest was made after Boyer made his videotaped statement. The statement, being a confession to the crime, clearly provides probable cause for the police to arrest Boyer.

■ A person waives the right to remain silent or have counsel, if during an in-custody interrogation the *Miranda* warnings are given and a voluntary, uncoerced statement is made after such warnings are given. *State v. Olds,* 569 S.W.2d 745, 751[4] (Mo. banc 1978). However, before such statements can be admitted, the state has the burden to prove by a preponderance of the evidence that the statement was voluntarily given. *Id.* This burden can be made by showing that he was informed of his constitutional rights prior to interrogation, that he understood these rights and no physical force, coercion, promises or other means of

inducement were employed. An examination of the record before us shows that the state has met its burden and the trial court properly admitted Boyer's statement. Boyer waived his *Miranda* rights twice before the videotaped confession and once during the taping session. No evidence of physical force, coercion, promises or other means of inducement to procure the statement is present within the record.

Evidence before us indicates that Boyer's cooperation was fully voluntary. He voluntarily accompanied the police officers to their headquarters after he sought them out in a coffee shop and cooperated fully during the investigation. Only after Boyer made the confession was he placed under arrest. Thus, the videotaped statement clearly supplies the probable cause.

Boyer also maintains that he was intoxicated when the statement was made and that such intoxication renders the statement inadmissible. Even though there is evidence of voluntary intoxication, if the accused knows what he was saying when he made the statement, it is admissible. The intoxication goes to the weight that the finder of fact gives to the statement. *State v. Craig,* 642 S.W.2d 98 at 101 (Mo. banc 1982). Thus, we find no merit in Boyer's second point.

The final point of error alleges that the trial court's failure to make a detailed finding as to the voluntariness of Boyer's confession in its overruling of Boyer's motion to suppress the confession violated his constitutional rights and constituted manifest injustice.

■ Boyer did not preserve this issue for appeal, but requests that we review it under the plain error rule. Rule 29.12(b). An explanation of the "plain error" rule was made by our Supreme Court in *State v. Murphy,* 592 S.W.2d 727 (Mo. banc 1979) wherein it stated:

> [T]he rule does not cover all trial error, should be exercised sparingly, cannot be used as a vehicle for review of every alleged trial error . . . and is limited in its application to cases where there is a manifestation and showing that injustice or

miscarriage of justice results if the rule is not invoked.
*Id.* at 732[9].

■ When requested, the trial court must hold a pre-trial hearing on a motion to suppress a confession. The burden is on the state to prove by the preponderance of the evidence that the confession was voluntary. *Olds* at 751. The record should reflect the trial judge's conclusion as to the voluntariness, and his findings may be express or ascertainable from the record. *State v. Hull,* 595 S.W.2d 49, 52–53 [6–7] (Mo.App. 1980).

■ In reviewing the trial court's ruling on Boyer's motion, we consider whether the totality of the circumstances deprived him of a free choice to admit, to deny or to refuse to answer, and whether physical or psychological coercion was of such a degree that his free will was overborne at the time he confessed. *State v. Higgins,* 592 S.W.2d 151, 158[8] (Mo. banc 1979).

An examination of the totality of the circumstances in the instant case reveals that Boyer was not deprived of his free choice to admit or deny. He voluntarily accompanied the police officers to headquarters. Three separate *Miranda* warnings were given to Boyer, and each time he intelligently waived his rights. There was no evidence of any coercion by the police officers.

We do not believe that the trial court's failure to make specific findings in addition to its dispositive order is plain error since the record as a whole clearly indicates that the confession was voluntary. *Hull* at 52–53[6–7].

The judgment of the trial court is affirmed.

STEPHAN and SATZ, JJ., concur.