974 F.2d 1332
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of AMERICA, Plaintiff-Appellee,
v.
Larry COWARD, Defendant-Appellant.
 No. 91-5369.
 United States Court of Appeals,
Fourth Circuit.
 Argued: July 8, 1992
Decided: September 1, 1992
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at New Bern. Malcolm J. Howard, District Judge. (CR-90-52)
 ARGUED: George Alan DuBois, Jr., Assistant Federal Public Defender, Raleigh, North Carolina, for Appellant.
 John S. Bowler, Assistant United States Attorney, Raleigh, North Carolina, for Appellee.
 ON BRIEF: Margaret Person Currin, United States Attorney, Jane H. Jolly, Assistant United States Attorney, Raleigh, North Carolina, for Appellee.
 E.D.N.C.
 Affirmed.
 Before ERVIN, Chief Judge, and PHILLIPS and MURNAGHAN, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Larry Coward was convicted by a jury of possession with intent to distribute crack cocaine (21 U.S.C.s 841(a)(1)) and of using a firearm during a drug trafficking crime (18 U.S.C. § 924(c)). He now appeals his convictions. We affirm.
 
 
 2
 * On September 13, 1991, narcotics agents executed a warrant search of a house at 506 East Caswell Street, Kinston, North Carolina. The warrant was obtained based on information given by a confidential informant regarding drug activity in the house. Agents entered the house after forcing the front door open with a sledgehammer. Agent John Rea of the North Carolina Bureau of Investigation found appellant Larry Coward and his cousin, Calvin Coward, in a back bedroom of the house.[1] On the floor near them, Agent Rea found a .38-caliber pistol. In searching the bedroom, agents found several ziplock baggies containing what was later chemically analyzed and determined to be 2.5 grams of crack cocaine, a .32-caliber gun, a small black bag containing a small quantity of marijuana and what was later chemically analyzed and determined to be 42.5 grams of crack, and several empty ziplock baggies and manila envelopes. In other rooms of the house, agents found a substantial quantity of stolen property, including televisions, stereos, and VCRs.
 
 
 3
 Calvin told the agents searching the house that he rented the back bedroom from his mother, who owned the house. Based on this information, Calvin was placed under arrest. Larry, along with other people found in the house at the time of the warrant search, was allowed to leave after the search was completed. Agent Rea testified that before Larry left, he (Larry) told Rea that the .38-caliber pistol found in the bedroom was his. Later, Agent Rea approached Larry, who was sitting on the front porch of the house next door, and asked if he could talk to him. Larry agreed, returning with Agent Rea to 506 East Caswell Street, where he was further questioned. Agent Rea later testified that Larry appeared nervous and uncomfortable during the questioning.
 
 
 4
 Larry made several incriminating statements in response to questions posed by Agent Rea. When asked whether anything in the house besides the pistol belonged to him, Larry answered that he had in the house a black bag containing .38-caliber bullets. Upon further questioning, Larry admitted that the bag also contained crack cocaine. At this point, Larry was placed under arrest and taken to the police station, where he was further interrogated.
 
 
 5
 Agent Rea testified at trial that Larry was informed of his Miranda rights before being further questioned, but it does not appear that Larry ever executed a written waiver of his rights, nor did the Government introduce any other evidence to corroborate Rea's testimony that Larry had been so advised. During questioning at the police station, Larry changed his original story and told Agent Rea that while the .38-caliber pistol and the black bag were his, the crack cocaine in the black bag was not. Larry said further that he had only seen the crack in the bag when he went in it to get some marijuana for his personal use.
 
 
 6
 Larry was charged with possession with intent to distribute crack cocaine and with using a firearm during a drug trafficking offense. At trial, Dwight Kornegay, one of the agents involved in the search of 506 East Caswell Street, gave testimony concerning the circumstances of the search. Most of Kornegay's testimony was unobjectionable, but in response to a question from the bench, Kornegay testified that stolen property had been found in the house during the search. Because no charges had been brought against Larry that were in any way connected with the stolen property, the district court instructed the jury not to consider this testimony. At the close of the Government's case in chief, Larry moved for a mistrial based on the jury's having heard this inadmissible testimony. The motion was denied.
 
 
 7
 Larry renewed the mistrial motion at the close of all evidence and the court once again denied it.
 
 
 8
 As noted earlier, Agent Rea testified at trial with regard to incriminating admissions made by Larry. The trial court, however, did not instruct the jury, as required by 18 U.S.C. § 3501(a), on how to evaluate the accuracy and significance of these admissions.
 
 
 9
 The jury returned guilty verdicts against Larry on both the possession with intent to distribute and firearm counts, for which he was sentenced to a total of 181 months in prison. Larry now appeals his convictions on grounds (1) that the district court erred in not instructing the jury, pursuant to 18 U.S.C. § 3502(a), on how it should evaluate the accuracy and significance of testimony regarding incriminating admissions he made to Agent Rea, and (2) that the court erred in not granting his motion for a mistrial after a Government witness made an inadmissible statement regarding uncharged criminal activity. We consider these claims in turn.
 
 II
 
 10
 In any criminal prosecution brought by the United States or by the District of Columbia, a confession ... shall be admissible in evidence if it is voluntarily given. Before such confession is received in evidence, the trial judge shall, out of the presence of the jury, determine any issue as to voluntariness. If the trial judge determines that the confession was voluntarily made it shall be admitted in evidence and the trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all circumstances.
 
 
 11
 18 U.S.C. § 3501(a) (emphasis added). Since we have held that the trial court should instruct the jury specifically on the law governing the use of a confession, whether or not the defendant requests the court to do so, United States v. Inman, 352 F.2d 954, 956 (4th Cir. 1965); United States v. Sauls, 520 F.2d 568, 570 (4th Cir. 1975), it was error for the court not to so instruct the jury. That said, however, even though "it is plain error to fail to give such specific instruction, reversal will not follow if the failure may be deemed non-prejudicial and harmless," Sauls, 520 F.2d at 570, which we find to be the case here.
 
 
 12
 The defense did nothing at trial to put in issue the voluntariness vel non of the confession. No objection was made to the admission of Agent Rea's testimony of the inculpatory admissions Larry made to him. Larry's contention on appeal notwithstanding, defense counsel at trial, in cross-examining Agent Rea, made no attempt to put in issue the voluntariness of the confession Agent Rea procured from Larry.2 Although other courts have held that a specific voluntariness instruction is not required if the defendant has not in some way raised the issue of voluntariness, see, e.g., United States v. Bondurant, 689 F.2d 1246 (5th Cir. 1982) (instruction required only if defendant presents evidence sufficient to raise genuine factual issue concerning voluntariness of confession); United States v. Fera, 616 F.2d 590 (1st Cir. 1980) (same), that is not the law of this circuit, see Inman, 352 F.2d at 956; Sauls, 520 F.2d at 570. Nevertheless, the fact that voluntariness was not put before the jury in the present case suggests strongly to us, and we so find, that any error in not specifically instructing the jury on voluntariness, as required by 18 U.S.C. § 3501(a), was harmless. Cf. Sauls, 520 F.2d at 570 (failure of trial court to instruct jury specifically on "an issue upon which there was no evidence before them" could not be regarded as prejudicial) (quoting United States v. Goss, 484 F.2d 434, 438 (6th Cir. 1973)).
 
 III
 
 13
 The defense motion for a mistrial was based on the statement made by a prosecution witness, in response to a question from the bench, that stolen property was found at 506 East Caswell Street. That the statement was inadmissible is not questioned on appeal; the prosecution in no way sought to elicit this inadmissible statement, since it was a question from the bench that brought it forth, and the trial court promptly instructed the jury to disregard it, albeit merely by saying, "Ladies and gentlemen, do not consider that. That has nothing to do with this matter." J.A. at 41. The only question, then, is whether the error nevertheless was harmless, which turns on" 'the closeness of the case, the centrality of the issue affected by the error, and the steps taken to mitigate the effects of the error.' " United States v. Nyman, 649 F.2d 208, 212 (4th Cir. 1980) (quoting Gaither v. United States, 413 F.2d 1061, 1079 (D.C. Cir. 1969)). All three factors militate against a finding of prejudicial error in the present case.
 
 
 14
 In light of the unchallenged inculpatory statements made by Larry to Agent Rea, the case against Larry was by no means close. The inculpatory statements alone were sufficient to sustain the convictions on the offenses charged. Larry contends that the careless statement "strongly bolstered the prosecution's theory of the case" that 506 East Caswell Street "was not a normal residence but was, in fact, ... a house used for the commission of crime." In light of the evidence of other contraband found in the house-the 45 grams of crack cocaine, the .38and .32-caliber guns, the ziplock baggies, the manila envelopes-the stolen property evidence could have added but little to the establishment of this theory. Finally, the court acted quickly and decisively to instruct the jury to disregard the statement as irrelevant to the charges. We conclude, therefore, that the district court did not err in denying the motion for a mistrial because of the inadmissible statement the jury heard regarding stolen property found at 506 East Caswell Street.
 
 IV
 
 15
 Because we find no error warranting reversal of Larry's convictions, they are hereby affirmed.
 
 AFFIRMED
 
 
 [1]
 For convenience, we will refer to the Cowards by their first names. This appeal, however, concerns only Larry
 
 
 [2]
 Larry contends here that trial counsel "vigorously cross-examined Agent Rea concerning the circumstances under which [Larry's inculpatory] statements were made," citing to pages 86-90 in the joint appendix. Brief for Appellant at 8. Having examined these and all other excerpts from the trial transcript that were included in the joint appendix, we find nothing in them that raises the issue whether the circumstances under which Larry made the inculpatory statements rendered them involuntary. Significantly, Larry does not challenge their voluntariness on appeal